# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 11

OCTOBER TERM, A.D. 2015

*January 26, 2016*

NATHANIEL CASTELLANOS,

Appellant
(Defendant),

v.                                                        S-15-0029

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, Wyoming Public Defender; Tina N. Olson\*, Chief Appellate Counsel; and Elizabeth B. Lance of Woodhouse Roden Nethercott, LLC, Cheyenne, WY.  Argument by Ms. Lance.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; and Joshua C. Eames, Assistant Attorney General.  Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, FOX, and KAUTZ, JJ., and PERRY, D.J.*

\*Order Allowing Withdrawal of Counsel entered on February 17, 2015,

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Nathaniel Castellanos was arrested on August 23, 2011, and charged with two counts of first degree murder and one count of attempted first degree murder in connection with the shooting of three persons in his home.  He was arraigned on October 3, 2011, and his jury trial began on February 18, 2014—910 days after his arrest and 869 days after his arraignment.  The jury returned a guilty verdict on all three charges but declined to impose the death penalty.  The district court thereafter sentenced Mr. Castellanos to three consecutive sentences of life without the possibility of parole.

[¶2]    On appeal, Mr. Castellanos claims a violation of his right to a speedy trial under Wyoming Rule of Criminal Procedure 48 and the United States Constitution.  He also claims ineffective assistance of counsel and error in the jury selection process.  We affirm.

## ISSUES

[¶3]    Mr. Castellanos states the issues on appeal as follows:

> I.      Was Mr. Castellanos denied his right to a speedy trial in violation of both the Wyoming and United States Constitutions and W.R.Cr.P. 48?
>
> II.     Was Mr. Castellanos denied the effective assistance of counsel by his first appointed counsel?
>
> III.    Did the trial court abuse its discretion when it denied Mr. Castellanos' challenges for cause against two jurors?

## FACTS

**I.      Events Leading to the Arrest of Mr. Castellanos**

[¶4]    On August 23, 2011, Mr. Castellanos decided to take a few days leave from his employment to deal with the stress he was experiencing from a break-up with his fiancé that afternoon and from child custody disputes he was having with his ex-wife.  That evening, he sent text messages to his friend Megan McIntosh inviting her for a beer and to play poker at Mingles Bar in Cheyenne, Wyoming.  The two exchanged text messages in which Ms. McIntosh told Mr. Castellanos that she now had a boyfriend and probably could not make it to the bar in time for the poker game.  Mr. Castellanos replied that she should bring her boyfriend and they could just have a drink.

1

[¶5]    At around 8:00 to 8:30 that evening, Ms. McIntosh went to Mingles Bar with her boyfriend, Corey Walker, and her roommate, Amber McGuire.  When they arrived at Mingles, they got their drinks and sat at a table.  Ms. McIntosh then approached Mr. Castellanos at the bar where he was seated.  She talked with him for a bit and then the two returned to the table, where Mr. Castellanos introduced himself to Mr. Walker and Ms. McGuire.  After visiting for a while, the four decided to leave the bar and go to Mr. Castellanos' home.

[¶6]    At Mr. Castellanos' home, the four sat on his patio and had drinks.  At some point, Mr. Castellanos asked if any of them knew where they could get some marijuana, and Ms. McGuire said she knew of someone who might be able to sell them some.  Ms. McGuire made arrangements to meet that person at King Soopers, and the four got in Mr. Walker's car.  On the way to King Soopers, Ms. McGuire became concerned with the way Mr. Castellanos was acting because he kept asking about the person they were meeting and he wanted to personally meet him.  Ms. McGuire was concerned that Mr. Castellanos might be an informant so she called off the meeting.

[¶7]    The four returned to Mr. Castellanos' home, and Ms. McGuire, Ms. McIntosh, and Mr. Walker went upstairs into the dining room/kitchen area.  Mr. Castellanos then came running up the stairs, entered the dining room/kitchen area, and shot Mr. Walker.  Mr. Castellanos next turned to Ms. McIntosh and yelled, "You stupid lying bitch.  How could you do this to me[?]  Don't you love me?"  Ms. McIntosh was crying and trying to tell Mr. Castellanos to call 911.  She crouched down and held a hand over her head, and Mr. Castellanos shot her.  Mr. Castellanos then turned to Ms. McGuire, and she asked, "How could you do this to us?"  Mr. Castellanos replied, "Because somebody's got to do it," and then he shot Ms. McGuire.

[¶8]    At approximately 10:47 that evening, a neighbor of Mr. Castellanos called 911 because she had heard the shots fired in Mr. Castellanos' home.  The neighbor reported that she heard one shot followed by screaming and then two more shots.  Officer Matthew Colson of the Cheyenne Police Department was the first to respond to the reported shots and arrived at the scene at 10:51 p.m.  He first drove slowly through the neighborhood with his headlights off and then parked and began to walk the neighborhood on foot.  Officer James Eddy arrived at 10:58 p.m. while Officer Colson was walking the neighborhood.

[¶9]    When Officer Eddy got out of his vehicle, both officers heard another gunshot from inside Mr. Castellanos' home.  The officers approached the house, with Officer Colson staying in a position to maintain a line of sight with the front of the house, and Officer Eddy working his way to the back of the house.  As Officer Eddy approached the back of the house, he could see Mr. Castellanos standing in front of the kitchen window behaving in what appeared to be a calm manner.  Officer Eddy watched Mr. Castellanos for a moment and then illuminated his flashlight and made verbal contact with him.

2

Officer Eddy ordered Mr. Castellanos to exit the house with his hands raised, and Mr. Castellanos complied. As Officer Eddy handcuffed Mr. Castellanos, Mr. Castellanos told him that the man who did the shooting had run out the front door. When Officer Eddy told him no one came out the front door, Mr. Castellanos told him the shooter must have run downstairs.

[¶10] When additional officers arrived, a search of Mr. Castellanos' entire residence was conducted. Officers found the three victims but no other persons were found in the home. Officers also found a wet handgun on the kitchen counter next to a wet paper towel with blood on it. Mr. Castellanos told the investigating detective that the handgun was his and that he had tried to clean the weapon and his own hands after wrestling the gun away from the shooter.

[¶11] Mr. Walker and Ms. McIntosh each suffered a single gunshot wound to the forehead and died from their injuries. Ms. McGuire suffered two gunshot wounds to the head and survived her injuries.

[¶12] Mr. Castellanos was taken into custody on August 23, 2011, and a warrant for his arrest was issued on August 26, 2011. On August 26, 2011, the State filed an information charging Mr. Castellanos with two counts of first degree murder and one count of attempted first degree murder. The proceedings following Mr. Castellanos' arrest were prolonged, and because Mr. Castellanos has asserted a violation of his right to a speedy trial, we must set forth those proceedings and their dates in some detail.[1]

## II.    Proceedings Following the Arrest of Mr. Castellanos

## A.    Preliminary Hearing, Arraignment and State's Death Penalty Election

[¶13] On August 26, 2011, the circuit court issued a notice of setting that scheduled Mr. Castellanos' preliminary hearing for September 1, 2011. On August 31, 2011, Mr. Castellanos filed a Waiver of Speedy Preliminary Hearing and moved to continue the preliminary hearing. The preliminary hearing was continued to September 8, 2011, and following that hearing, Mr. Castellanos was bound over to the district court.

[¶14] On September 16, 2011, the district court, the Honorable Peter G. Arnold presiding, issued an order setting Mr. Castellanos' arraignment for September 26, 2011. On September 22, 2011, Mr. Castellanos requested a re-setting of the arraignment, and on that same date, the arraignment was continued to October 3, 2011. On October 3, 2011, the court held Mr. Castellanos' arraignment hearing and accepted his plea of not guilty to

---

[1] The proceedings set forth in the following portion of this opinion relate primarily to Mr. Castellanos' claim that his right to a speedy trial was violated. Additional facts relevant to Mr. Castellanos' claims of ineffective assistance of counsel and errors in jury selection will be set forth in our discussion of those issues.

3

all charges. During that hearing, after Mr. Castellanos had entered his plea, defense counsel asked the court to continue the arraignment to allow for the filing of any motions required to be filed before arraignment. The court commented that Mr. Castellanos' plea had already been entered and accepted but granted the request and continued the arraignment to October 10, 2011. The arraignment then concluded on October 10, 2011.

[¶15] On October 14, 2011, the district court entered an order setting October 31, 2011 as the State's deadline to elect whether to seek the death penalty. On October 25, 2011, Mr. Castellanos moved to extend that deadline to allow the defense an additional ninety days in which to submit information that might dissuade the State from seeking the death penalty. On October 26, 2011, the court held a hearing on the defense motion. During that hearing, the court asked whether defense counsel would concede that the delay caused by the extension would be attributable to the defendant and then ordered both parties to brief the question. At that point, defense counsel informed the court that Mr. Castellanos was not willing to waive his right to a speedy trial. On November 15, 2011, the parties filed a stipulated agreement regarding the State's deadline for making its death penalty election. The parties agreed that the defense would submit mitigating evidence to the State on or before December 23, 2011, and the State would announce its election on or before December 30, 2011. The parties further stipulated:

> The parties also agreed that this extension was requested by the Defendant, and that it does not fall within any of the statutory exemptions for calculation of speedy trial, as set forth in W.R.Cr.P. 48(b)(3). The parties therefore agree that this extension shall not be exempted from the speedy trial calculation.

[¶16] On November 15, 2011, the district court entered an order setting the deadlines to which the parties stipulated and also providing:

> IT IS FURTHER ORDERED that the extension of time granted herein is attributable to the Defendant, and does not fall within any of the statutory exemptions for calculation of speedy trial, as set forth in W.R.Cr.P. 48(b)(3). This extension shall therefore not be exempted from the speedy trial calculation.

[¶17] On December 27, 2011, the State filed its Notice of Intent to Seek Death Penalty. The State cited the following aggravating circumstances in support of its notice:

> 1. That the Defendant knowingly created a great risk of death to two or more people.

4

2. That the Defendant poses a substantial and continuing threat of future dangerousness or is likely to commit continued acts of criminal violence.

3. That the Defendant, prior to any penalty phase proceedings, will have been convicted of a felony involving the use or threat of violence to a person.

4. That the murder was especially atrocious or cruel, being unnecessarily tortuous [sic] to the victim, Megan McIntosh.

5. The murder was committed for the purpose of avoiding or preventing a lawful arrest.[2]

## B.   First Continuance and Withdrawal of Defense Team One

[¶18]  Mr. Castellanos' trial was originally set for March 20, 2012.  On January 6, 2012, defense counsel filed a motion to continue the trial for a period of eighteen months.[3]  In support of the motion to continue, defense counsel emphasized the heightened responsibility that attaches to defending a death penalty case and the additional time demanded to adequately prepare a defense in such a case.  Defense counsel further stated (citations omitted):

6. Discovery is ongoing, and the Defendant continues to receive materials from the State.  These materials must be carefully analyzed and evaluated, not only by counsel, but by various expert witnesses.  To-date the State has produced well over 1,500 pages of material, the most recent 500 pages being received on January 3.

7. Counsel for the Defendant are required under the *ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* to receive specialized training in capital litigation.  The appropriate seminars and programs are located throughout the United States, the first of which, "Capital Case Defense Seminar," is scheduled for February 17-20 in Monterey, California.  Another crucial seminar, the NACDL "Capital Voir Dire

---

[2] The State separately listed the aggravating circumstances for the murders of Corey Walker and Megan McIntosh.  This list was the one provided for the murder of Ms. McIntosh.  The aggravating circumstances identified for the murder of Mr. Walker were identical to factors one through three on the list for Ms. McIntosh.

[3] At this point, the public defenders assigned to represent Mr. Castellanos were Robert Rose, III, and Mitch Guthrie.  By the time Mr. Castellanos was tried, he had three separate teams of public defenders.  For clarity, we shall refer to this first team of attorneys as Defense Team One.

Training Seminar," is slated for May 17-19 in Boulder, Colorado. A third is the "Bryan R. Shechmeister Death Penalty College" at Santa Clara University School of Law, July 21-26. Undersigned counsel are required as a part of their employment, in capital litigation, to attend these seminars.

* * *

9. Undersigned counsel are still in the process of identifying and retaining certain expert witnesses, some of whom are not able to be identified and retained until the State reveals the nature and extent of the evidence it intends to introduce at trial. Upon information and belief, a substantial amount of the evidence in this case is forensic, which is currently undergoing scientific analysis by the Wyoming State Crime Laboratory. The results of such testing will dictate the type of experts required by the Defendant.

* * *

11. Undersigned counsel have conferred at great length with the Defendant regarding the need for a continuance, and the desire that he sign a waiver of speedy trial to enable counsel to thoroughly prepare. To-date, however, the Defendant refuses to waive speedy trial, and insists on proceeding to trial on March 20, 2012.

* * *

12. For the reasons stated above, undersigned counsel for the Defendant will not be prepared to try the case on March 20, 2012. Moreover, undersigned counsel will not be considered legally competent to effectively represent the Defendant in a capital case at that time. Should the Court elect not to continue this matter for the time requested, undersigned counsel will have no alternative but to seek withdrawal from representing the Defendant in this matter.

[¶19] Although the district court had ordered that pending motions would be considered at a motions hearing on January 18, 2012, the court emailed all counsel on January 10, 2012, and requested that the parties be present for a hearing that day regarding the defense motion to continue. The court informed counsel:

I think it is appropriate to have a hearing at which I receive information from Ms. Lozano [State Public Defender] about the availability of replacement counsel for [Mr. Rose] and [Mr. Guthrie]. The way I read the motion for a continuance, they do not currently feel professionally prepared to proceed

6

with Mr. Castellanos's defense. I am uncomfortable conducting the hearing on the 18th without some information from the public defender's office as to the availability of counsel competent to replace Mr. Rose and Mr. Guthrie if that is the outcome of the motion to continue. By the same token, I am uncomfortable waiting another week to make that decision. I realize there are other motions pending which are critical to the proceeding, however, I believe it is important to get replacement counsel on board as soon as possible in the event I decline to grant the motion to continue.

[¶20] State Public Defender Diane Lozano did appear at the January 10, 2012 hearing. Ms. Lozano advised the court that the two public defenders whom she felt were most qualified to serve as lead counsel in a death penalty case would not be available until the middle to end of February 2012. Ms. Lozano informed the court that she herself was qualified to try capital cases and to supervise this capital case, but that she could not serve as lead counsel because of the potential conflict should her appellate division need to make arguments concerning the effectiveness of trial counsel. Ms. Lozano further informed the court:

> I would also add that when we first were appointed to this case, of course, it wasn't a capital case. I chose two attorneys who I know to be competent who provide high-quality legal representation in all manner of cases, but specifically, the more serious conflict cases specifically for Mr. Rose.
> I will be honest with the Court and tell the Court that we began treating this as a potential capital case from the minute we were appointed to it, given the fact and circumstances we thought that it would be better to be cautious in that regard.
> We have hired a mitigation specialist who has started some investigations. I have not talked to her in regard to this motion. My guess is that she would need six to nine more months to investigate mitigation, but that's probably between the Court and Ms. Herrera would be our mitigation specialist's name.
> THE COURT: I assume she is an attorney.
> MS. LOZANO: You know, she is an attorney. A lot of mitigation specialists are not, but she is also. And she's got a therapeutic background and a mitigation investigation background on top of the fact of investigation.
> THE COURT: What's her name?

7

MS. LOZANO: Susan Herrera. She's based in New Orleans. And we can probably get you more information on her if we need to.

We also started looking for training immediately because although I felt that Mr. Guthrie and Mr. Rose were qualified to do this case, I knew I needed to get them training.

[¶21] The district court did not decide the defense motion to continue during the January 10th hearing and instead took the matter under advisement. In doing so, the court directed that Mr. Castellanos be appointed separate counsel to advise him on his speedy trial right and on the filing of objections to the requested continuance.

[¶22] The State objected to the defense motion to continue both during the January 10, 2012 hearing and in a written opposition filed on January 11, 2012. In its written opposition, the State particularly objected to a continuance of eighteen months and asked that if a continuance were granted, that it be a much shorter continuance and that the trial be scheduled by August 2012. In its written opposition, the State also took issue with the defense assertion that the continuance was necessary due to delays in receiving discovery from the State:

> 4. Forensic evidence testing issues were discussed and a time line of completed testing in January, 2012 was indicated. Defense counsel agreed such a time line was workable. It appears all forensic testing will be completed by that time.
> 5. Full discovery was provided by the State despite there being no demand filed by the Defendant. The last 500 pages listed by the Defendant in his motion consist largely of transcripts of interviews. The recordings of those interviews had been provided in the past.

[¶23] On January 17, 2012, the district court held a second hearing on the defense motion to continue. The attorney appointed to advise Mr. Castellanos on his speedy trial right was present and informed the court that Mr. Castellanos would not waive his right to a speedy trial and objected to the requested continuance. The court then ruled that it would grant the continuance on the court's own motion in the due administration of justice.

[¶24] On January 24, 2012, the district court issued its written Order Continuing Trial. The court explained its ruling and invited Mr. Castellanos to inform the court of any prejudice resulting from the continuance:

> Rule 48(b)(4)(B) only allows a continuance on the Court's motion without a waiver of the right to a speedy trial

8

if the Court finds a continuance is required in the "due administration of justice." * * * In this case, in order for the Defendant to receive a fair trial, he must have competent counsel experienced in the defense of capital cases. Therefore, the due administration of justice requires a continuance in order that the Defendant's right to a fair trial may be preserved.

Rule 48(b)(4)(B) only allows a continuance on the Court's motion without a defendant's waiver of the right to speedy trial if the defendant "will not be substantially prejudiced" by the delay. The Wyoming Supreme Court has stated that when considering whether a Defendant has been prejudiced by a continuance, the "most serious" factor to consider is whether a defendant's defense will be impaired. *Whitney v. State*, 2004 WY 118, ¶ 54, 99 P.3d 457, 475 (Wyo. 2004). This is because "the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. Defendant's counsel has alleged that in order to adequately prepare for trial and competently represent the Defendant, a continuance is necessary. The Defendant may, with the advice of Mr. Serelson, file with the court any information regarding possible prejudice that this continuance may cause. However, at this point, the Court does not find that a continuance will prejudice the Defendant as anticipated by Rule 48(b)(4)(B).

[¶25] On February 21, 2012, the district court issued an order setting Mr. Castellanos' trial to begin on August 14, 2012. On February 24, 2012, Defense Team One moved to withdraw as counsel for Mr. Castellanos on the ground that counsel from the Public Defender's Office with prior capital case experience had been assigned as lead counsel for Mr. Castellanos. On February 27, 2012, the court held a hearing on Team One's motion to withdraw. One of Mr. Castellanos' new attorneys, Kerri Johnson, was present for that hearing and informed the court that she and Robert Oldham would be formally entering their appearance on behalf of Mr. Castellanos later that day. Ms. Johnson also informed the court that she could not be prepared to go to trial by the original mid-March trial date, but that she would be filing a speedy trial demand on behalf of Mr. Castellanos, and that the trial should not be continued past the August date without a speedy trial waiver.

[¶26] On February 27, 2012, Ms. Johnson and Mr. Oldham (Defense Team Two), formally entered their appearance for Mr. Castellanos and filed a demand for a speedy trial pursuant to W.R.Cr.P. 48. On March 2, 2012, Mr. Castellanos signed and filed his

objection to the continuance of the March trial date. On March 8, the district court issued an order in response to Mr. Castellanos' objection. The court ruled:

> In the Defendant's Objection, he alleges that it was inappropriate for his counsel at the time of the Order to allege that they needed more training and then move to withdraw.
>
> The Defendant has failed to show that he will be "substantially prejudiced" by the continuance, as anticipated by Wyoming Rules of Criminal Procedure, Rule 48. Not only will he not be prejudiced by this delay, his former counsel conceded that they were not sufficiently professionally prepared to try the case on the date scheduled, that being March 20, 2012 and even more particularly since the Defendant's current counsel are professionally capable of representing the Defendant. The Court also notes that Ms. Johnson, one of the Defendant's current counsel advised the Court on the record that she could not be prepared to try the case in March, 2012. Lastly, the defendant's counsel participated with the State's attorney in selecting the date of August 14, 2012 for the trial.

## C.     Mental Health Proceedings and Second Continuance

[¶27] On July 30, 2012, Defense Team Two filed a motion to continue Mr. Castellanos' August 14, 2012 trial. As grounds for the motion, defense counsel asserted: 1) that the testimony of Amber McGuire, the surviving victim, had recently changed; and 2) the defense team's mitigation investigation was not yet complete and had been complicated by recent mental health evaluations which required further investigation into Mr. Castellanos' medical history, the records of which were located outside the United States. The State opposed the motion to continue and disputed there were any material changes in Ms. McGuire's testimony or that there was any need to further investigate mitigation evidence.

[¶28] On July 30, 2012, Defense Team Two also filed a motion to suspend proceedings to determine Mr. Castellanos' competency to proceed. In support of this motion, defense counsel cited a recent evaluation by a mental health professional, which counsel felt required additional time to investigate the causes, effects, severity and duration of the diagnosed mental illness. Defense counsel further asserted:

> 3.     However, in a meeting with Mr. Castellanos to inform him of the motion to continue and the reasons therefore, the client was adamant that counsel withdraw the motion.

10

4.     When Counsel inquired as to the reasons Mr. Castellanos refused the request for a continuance, an irrational conversation ensued. This led Counsel to believe that his responses were based on some of the symptoms of his mental illness rather than rational thought. This conversation made it clear to counsel that he lacks the capacity to meet the standards in W.S. § 7-11-303(c)(iii).

[¶29]  On August 7, 2012, the district court entered an Order to Suspend Proceedings Pending Evaluation of the Defendant Pursuant to W.S. 7-11-303(a). The court ordered that Mr. Castellanos be transported to the Wyoming State Hospital and that the State Hospital complete its evaluation of Mr. Castellanos and file its report within thirty days. On August 30, 2012, the State Hospital requested a thirty-day extension of its reporting deadline:

> * * * Mr. Castellanos was ordered to be evaluated on an inpatient basis. At the present time the CJS unit is at capacity and we anticipate the ability to admit this individual by the week of September 17, 2012. We respectfully request a 30-day extension from the date of admission to complete this evaluation, making the report available to the Court on or before October 17, 2012.

[¶30]  On August 30, 2012, the district court granted the Hospital's requested thirty-day extension to complete the evaluation and report. On November 1, 2012, the State filed a motion to compel requesting an order compelling the State Hospital to produce its report for the evaluation of Mr. Castellanos. On November 2, 2012, the State Hospital requested a second thirty-day extension to complete its evaluation and report:

> Due to the number of evaluations being requested at this time Mr. Castellanos was not admitted to the Criminal Justice Services (CJS) of the Wyoming State Hospital until September 24, 2012. Due to the complexities of the existing caseloads, we are respectfully requesting an additional 30-day extension to allow the designated evaluator the adequate time to complete this evaluation. The evaluation will be available to the Court on or before November 16, 2012.

[¶31]  On November 2, 2012, the district court entered an order granting the State Hospital's request for a second thirty-day extension. On November 19, 2012, the State Hospital issued its evaluation report for Mr. Castellanos. The report concluded:

[B]ased on all available information, it can be stated with a reasonable degree of psychological certainty that Mr. Castellanos has sufficient present capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with counsel to the end that any available defense may be interposed.

[¶32] On November 28, 2012, through an exchange of emails, Judge Arnold learned that neither defense counsel nor counsel for the State had received copies of the State Hospital's report, and on November 29, 2012, the district court mailed the report to both. On November 30, 2012, the report was filed with the district court, and on that same date the district court *sua sponte* issued an order setting a scheduling conference for December 7, 2012. On December 5, 2012, in an exchange of emails concerning the logistics of the December 7th hearing, defense counsel informed the court they would be requesting a second evaluation of Mr. Castellanos' competency to proceed. In response, the court asked counsel for both parties whether the scheduling conference should be delayed pending the outcome of the second evaluation. The State objected to any delay:

I would not agree for a number of reasons. First, the victims have a right to know when this case is going to be tried. Even if we schedule it now, it is going to be near two years since the crime. The State has been ready to go to trial for months. Secondly, the second evaluation should be required to be done within 30 days. That is what the statute provides. We have already spent four months getting the first evaluation. The trial can be scheduled. If, for some reason, the Defendant is found incompetent, the dates can be vacated. It's alot easier to cancel a three week trial than to find another three week block as we proceed. If we do not work out a schedule, the second evaluation will prove an even greater delay than the first. It is time to move forward.

[¶33] The district court went forward with the scheduling hearing on December 7, 2012. The first issue the court addressed during that hearing was the indication of Mr. Castellanos' dissatisfaction with Defense Team Two contained in the State Hospital's report:

THE COURT:        * * * [T]here are a lot of comments in there about Mr. Castellanos' dissatisfaction with his representation. And I think probably the first thing we ought to settle is to determine from you and Rob, Kerri,

12

whether he's made that clear to you and what your response is, what your reaction is.

MR. OLDHAM: Well, Judge, we haven't had any contact with our client. The day after the hearing, he called and Kerri wasn't in the office, and I spoke with him for 20 minutes. In the entire 20 minutes, it was just him screaming at me and expressing his anger on me and Kerri advertising him, so to speak, in his words.

He wouldn't speak to us so we had a mitigator from our team. She's had contact with him. She's been flying in from California and from New York and visiting with him about once a week, and he does speak with her. But he just keeps reiterating that he's not going to do anything as long as Kerri and I are on the team. And unfortunately, that includes him cooperating with her for mitigation and the penalty phase.

Our plan was to go down probably next week or the week after at the latest and try to meet with him in person, but he has been adamant that he will not meet with us if we go down there. But we do realize we have to try to meet with him in person.

* * *

But our relationship with him has just deteriorated, and it really concerns us at this point, Judge.

THE COURT: Well, it does me too. My interest is in getting this case tried, and right now, the only information I have on this issue is what I've read in the report. And so I'm not treating it as any kind of a motion. I'm just bringing it to the parties' attention.

And I think the best course for me to do is to go ahead and set it for trial, and you all do whatever you feel you have to do. And we will respond to it as it arises.

[¶34] During the scheduling hearing, the district court discussed the possibility of terminating the suspension of proceedings to allow the court an opportunity to rule on the issues concerning Defense Team Two's continuing representation of Mr. Castellanos. With the agreement of counsel for both parties, the court concluded the better course was to first resolve the request for a second competency evaluation. The court then turned to the question of scheduling the trial, commenting that "if we delay setting a date, that just sets things out further in the future, which is not in anybody's interest."

[¶35] The parties agreed that the trial would take four weeks. The earliest date the district court could accommodate a four-week trial was in June 2013, but the parties

13

agreed that logistically that date would not work because it would not allow sufficient time to issue jury questionnaires and have them returned. The court ultimately decided, with the agreement of counsel, that the trial should be scheduled to begin in September 2013. The court explained:

> And I want to put on the record the reason that we are talking about these dates is that – primarily because of the length of one block of time is going to make it inherently difficult to schedule it. I am prepared to do that, but I'm not particularly comfortable with rescheduling literally dozens of cases if we do it, for example, in July or August, which is what it would amount to. In September, we have the capacity to set aside essentially the whole month to accomplish the trial of this case.
>
> And I understand that Mr. Castellanos is very strongly urging and in favor of getting it done more quickly rather than more lately or more – further out in the future. I have already extended this case over his objections, so I'm pretty – pretty sensitive to the idea that I need to try it as soon as I can after consultation with counsel.

[¶36] On December 12, 2012, the district court issued an order setting Mr. Castellanos' trial to begin on September 3, 2013. On that same date, December 12, 2012, defense counsel filed their written request for a second competency evaluation, to which the State filed a written objection. On December 20, 2012, the district court issued an Order to Suspend Proceedings Pending a Second Evaluation of the Defendant Pursuant to W.S. 7-11-303(d). The order directed that the second evaluation be completed by an evaluator of defense counsel's choosing and that the evaluation be completed within thirty days. On January 7, 2013, defense counsel filed a motion requesting a thirty-day extension of the evaluation deadline, citing delays in processing the contract with the evaluator. On January 9, 2013, the district court issued an order granting the thirty-day extension.

## D.   Change of Counsel and Lifting of Suspension on Proceedings

[¶37] On January 14th and 17th, 2013, two new public defenders (Defense Team Three), Tina Olson and Dylan Rosalez, entered their appearance as counsel for Mr. Castellanos. On January 23, 2013, Ms. Johnson and Mr. Oldham, moved to withdraw as counsel because Mr. Castellanos was unwilling to continue with them as his appointed counsel. The district court granted that motion.

[¶38] On February 5, 2013, Defense Team Three filed a notice of their withdrawal of the request for a second competency evaluation and requested that the district court make findings as to Mr. Castellanos' competency to proceed. On March 5, 2013, the district

court held a status hearing at which it addressed the defense request to make competency findings. The court indicated it would be entering written findings adopting the State Hospital's determination that Mr. Castellanos was competent to proceed, and neither party objected. Counsel for the State then sought confirmation that the delay occasioned by the competency proceedings and the change in counsel would be properly accounted for under W.R.Cr.P. 48, and the following exchange ensued:

> [MR. BLONIGEN]: I would like the Court on the dates so that you don't get – I will address this a little further. The Court has been very meticulous about documenting Rule 48, time exclusions for the 180-day rule. And, of course, this is excludable under that rule.
> And we would also like further findings from the Court [on] the additional time between now and when we are set for trial as reasonable to allow new counsel to get prepared, file the motions, pursue those motions – in other words, pursuant to interests and administration of justice under Rule 48. So the Court has, as I said, been very meticulous about that in the past. But we would ask for a similar finding.
> THE COURT: I will do that. Thank you, Mr. Blonigen.
> MS. OLSON: * * * With regard to Rule 48 issues and any speedy trial issue, as you know from Mr. Castellanos's filing, and himself, there is also other discussion on the record. He continues to assert that he has been denied a speedy trial in this matter.
> THE COURT: I understand. I recognize that position and commented a couple times, but I will accept it once again.

[¶39] On March 22, 2013, the district court entered an Order Finding Defendant Competent to Proceed. In that order, the court made findings concerning Mr. Castellanos' competence to proceed and ordered that the suspension of proceedings be lifted.

## E.    Third Continuance

[¶40] On May 4, 2013, defense counsel sent an email to the Laramie County District Attorney concerning a misdemeanor case that office had filed against Mr. Castellanos. Counsel expressed concerns that the trial on the misdemeanor matter would take away time from other preparations and commented that "I am already extremely concerned about time and the status of the other matter." Defense counsel copied counsel for the

State and Judge Arnold with the email, which prompted the district court to set a status conference.

[¶41] On May 22, 2013, the district court held the scheduled status conference. During the status conference, defense counsel informed the court that the defense would be filing a motion to continue requesting that the trial be continued for a period of six months. As grounds for the continuance, Ms. Olson stated that the defense investigation was not complete and would not be complete by the September 2013 trial date and an important defense mitigation witness would not be available for the trial in September. The State strenuously objected to any further delay. Regarding Mr. Castellanos' position on the continuance, defense counsel stated:

> Your Honor, I have to make it very clear that his position has not changed. It's never changed. He did want a speedy trial, and he has asserted his right over and over to a speedy trial.
> And over his comments, including his written comments to that effect, this Court has continued the case past 180 days in the due administration of justice.

[¶42] The court did not rule on the motion to continue during the status conference and instead set deadlines for the defense to file its motion and for the State and Mr. Castellanos to object. The court directed that the defense motion detail the preparation completed to date, the preparation remaining, and the reasons the remaining preparation would not be completed by the currently scheduled trial date.

[¶43] On June 4, 2013, defense counsel filed Defendant's Third Motion to Continue Trial. The defense motion cited the importance of mitigation evidence in a capital case and then outlined in detail, with supporting affidavits, the mitigation work completed and that remaining. The motion identified two reasons in particular that the defense mitigation investigation was taking longer than it might in other cases. First, Mr. Castellanos emigrated from Guatemala to the United States and thus the collection of certain records required the use of a translator and forms appropriate under that country's protocols. Second, those members of Mr. Castellanos' family who were United States residents were not Wyoming residents. They resided on the east and west coasts, which required more travel and time to conduct the mitigation investigation. One of the motion's supporting affidavits also noted the impact of Mr. Castellanos' competency evaluation on the mitigation investigation:

> After the motion for competency evaluation was granted, the attorney-client relationship broke down. The competency evaluation caused the mitigation investigation to crawl to a halt as the defendant was requesting new counsel. A

significant amount of time and resources were focused on rebuilding a relationship with Mr. Castellanos.

[¶44] Mr. Castellanos opposed the motion to continue with his pro se filing of Defendant's Motion to Show Great Cause of Prejudice for Violation of Due Process. The State also filed a written opposition to the motion to continue, supported by victim affidavits asserting their interest in having the trial proceed with no further delay.

[¶45] Contemporaneous with the filing of the defense motion to continue, defense counsel also filed on June 4, 2013, a motion to dismiss for violation of Mr. Castellanos' constitutional right to a speedy trial. On July 8, 2013, the district court entered an Order Continuing Trial. In so ruling, the court found that granting the six-month continuance was required in the due administration of justice:

> Defense counsel requests a six (6) month continuance from the date of the current trial setting to further gather mitigation evidence and to otherwise adequately prepare for the Defendant's trial. Despite the concerns, defense counsel cannot properly move for a continuance under Wyo. R. Crim. P. Rule 48(b)(4)(A) because the Defendant, who has continuously declined to waive his right to a speedy trial, did not provide an affidavit in support of the Motion. Therefore, if the trial is to be continued, this Court would have to move under Rule 48(b)(4)(B). Believing that it is required in the due administration of justice, this Court moves *sua sponte* to continue the trial.
>
> * * *
>
> * * * Defendant asserts he has been prejudiced given the delay in bringing him to trial but fails to provide the Court with any suggestion of what prejudice he has actually suffered. Defendant's counsel on the other hand has alleged that in order to adequately prepare for trial and competently represent the Defendant, a continuance is necessary. In light of defense counsel assertions the Court finds Mr. Castellanos will not be prejudiced but will benefit by the granting of a continuance to allow counsel to further gather mitigation evidence. Thus, the Court does not find that a continuance will substantially prejudice the Defendant as anticipated by Rule 48(b)(4)(B). The Court recognizes the validity of some of the State's objections to a continuance but believes that on balance the Defendant's right to effective assistance of counsel and a fair trial has greater weight than the State's objections.

17

[¶46] On July 8, 2013, the district court also entered an Order of Assignment. The court ruled that the ends of justice would be best served by an assignment of the case and ordered that the case be assigned to the Honorable Thomas T.C. Campbell. On July 10, 2013, the district court, Judge Campbell presiding, issued a Scheduling Order setting Mr. Castellanos' trial to begin on February 18, 2014. On September 13, 2013, the court held a hearing on the defense motion to dismiss for lack of speedy trial, and on October 8, 2013, the court entered an order denying the motion. In so ruling, the court found the delay in the case "was not unreasonable given a majority of the delay is attributable to the Defendant and the Defendant has suffered no prejudice."

[¶47] Mr. Castellanos' trial began on February 18, 2014. On March 7, 2014, the jury returned a verdict of guilty on all three counts of the information against Mr. Castellanos. The penalty phase of the trial began on March 10, 2014, and on March 14, 2014, the jury returned its verdict imposing life without parole as the appropriate sentence on the two counts of first degree murder. On May 15, 2014, the district court entered its Judgment and Sentence, which implemented the jury's sentence on the two counts of first degree murder and also sentenced Mr. Castellanos to life without the possibility of parole on the attempted first degree murder count, for a total sentence of three consecutive terms of life without the possibility of parole. On May 27, 2014, Mr. Castellanos timely filed his notice of appeal to this Court.

## DISCUSSION

### I.    Speedy Trial Claim

[¶48] Mr. Castellanos asserts a violation of his right to a speedy trial under both W.R.Cr.P. 48(b) and the Sixth Amendment to the United States Constitution. Our review of such claims under Rule 48(b) and the Sixth Amendment is *de novo*. *Rhodes v. State*, 2015 WY 60, ¶ 9, 348 P.3d 404, 407 (Wyo. 2015); *Ortiz v. State*, 2014 WY 60, ¶ 32, 326 P.3d 883, 892 (Wyo. 2014).

### A.    W.R.Cr.P. 48(b)

[¶49] W.R.Cr.P. 48(b) is a procedural mechanism for enforcing a defendant's constitutional right to a speedy trial, and compliance with the rule is mandatory. *Dean v. State*, 2003 WY 128, ¶¶ 50-52, 77 P.3d 692, 706 (Wyo. 2003); *Taylor v. State*, 2001 WY 13, ¶ 8, 17 P.3d 715, 718 (Wyo. 2001). Rule 48(b)(2) requires a criminal charge to be brought to trial "within 180 days following arraignment unless continued as provided in this rule." W.R.Cr.P. (LexisNexis 2015). "Calculating the 180-day provision of Rule 48 is a simple matter of arithmetic, beginning with arraignment and ending with commencement of trial, excluding any time periods specified in the rule." *Ortiz*, ¶ 33, 326 P.3d at 892 (citing *Berry v. State*, 2004 WY 81, ¶ 21, 93 P.3d 222, 228 (Wyo. 2004)).

[¶50] Mr. Castellanos was arraigned on October 3, 2011, and his trial was originally set to begin on March 20, 2012, 169 days after his arraignment.[4] His trial setting was thereafter delayed three times and his trial began on February 18, 2014—869 days after his arraignment. Our Rule 48(b) analysis requires that we determine what amount of that delay, if any, counts toward the 180-day period within which Mr. Castellanos was required to be brought to trial.

[¶51] Rule 48(b) specifies two categories of time that do not count toward the 180-day limit and that we therefore subtract from the 869-day total in this case—those periods excluded by subsection (b)(3) and those periods that resulted from a continuance in compliance with subsection (b)(4). The rule defines those periods as follows:

> (3) The following periods shall be excluded in computing the time for trial:
>
> (A) All proceedings related to the mental illness or deficiency of the defendant;
>
> (B) Proceedings on another charge;
>
> (C) The time between the dismissal and the refiling of the same charge; and
>
> (D) Delay occasioned by defendant's change of counsel or application therefor.
>
> (4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:
>
> (A) On motion of defendant supported by affidavit; or
>
> (B) On motion of the attorney for the state or the court if:
>
> (i) The defendant expressly consents;
>
> (ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or
>
> (iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

---

[4] Mr. Castellanos' arraignment began on October 3, 2011 and concluded on October 10, 2011. His plea was taken and accepted during the October 3rd proceeding, however, so that is the date we use for his arraignment. *McEwan v. State*, 2013 WY 158, ¶ 32, 314 P.3d 1160, 1169 (Wyo. 2013) ("The *sine qua non* of an arraignment is the taking of a plea.").

> (C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

W.R.Cr.P. 48(b) (LexisNexis 2015).

## 1. First Delay of Trial: March 20, 2012 to August 14, 2012

[¶52] The district court originally set a trial date of March 20, 2012, for Mr. Castellanos. This date was 169 days after Mr. Castellanos' arraignment date and within the Rule 48(b) 180-day deadline. On January 24, 2012, however, the court granted a defense motion to continue the trial, over Mr. Castellanos' objection, and thereafter set a new trial date of August 14, 2012. Because Mr. Castellanos objected to the continuance, the court granted the continuance on its own motion pursuant to Rule 48(b)(4)(B)(iii). In doing so, the court found the continuance was in the interests of the due administration of justice and would not substantially prejudice Mr. Castellanos. Mr. Castellanos concedes the delay of trial from March 20, 2012 to August 14, 2012 does not count against the 180-day clock.

## 2. Second Delay of Trial: August 14, 2012 to September 3, 2012

[¶53] The August 14, 2012 trial date was voided when, on August 7, 2012, the district court granted the defense motion for a competency evaluation and entered an order suspending proceedings. The following dates are relevant to our analysis of the delay between the August 14, 2012 trial date and the third trial date of September 3, 2013:

> **November 19, 2012:** State Hospital issues evaluation report finding Mr. Castellanos competent to proceed;
> **November 29, 2012:** District court mails State Hospital's report to counsel for both parties;
> **November 30, 2012:** District court sets December 7, 2012 scheduling conference;
> **December 5, 2012:** Defense counsel informs court that defense will file a request for a second competency evaluation;
> **December 7, 2012:** District court holds scheduling conference;
> **December 12, 2012:** Defense files motion for second competency evaluation;
> **December 12, 2012:** District court issues order setting September 3, 2013 as new trial date;
> **December 20, 2012:** District court issues order granting motion for second competency evaluation;

**January 14/17, 2013:** Defense Team Three enters its appearance;
**February 5, 2013:** Defense Team Three requests withdrawal of motion for second competency evaluation;
**March 22, 2013:** District court enters order finding Mr. Castellanos competent to proceed.

[¶54] Rule 48(b) excludes from the 180-day calculation "[a]ll proceedings related to the mental illness or deficiency of the defendant." W.R.Cr.P. 48(3)(A). Mr. Castellanos contends the only period properly excluded pursuant to this provision is the period from August 14, 2012 to November 19, 2012, when the State Hospital issued its report finding Mr. Castellanos competent to proceed. We disagree.

[¶55] Nothing in Rule 48(b)(3)(A) specifies that the proceedings related to a defendant's mental health or deficiency terminate upon the issuance of an opinion that the defendant is competent to proceed. To the contrary, we have said that "[w]here the primary reason for the delay is the determination of the defendant's mental competency to stand trial, Wyoming law requires suspension of all criminal proceedings *until the district court can make a determination of the defendant's mental competency*." *Large v. State*, 2011 WY 159, ¶ 23, 265 P.3d 243, 249 (Wyo. 2011) (quoting *Hauck v. State*, 2001 WY 119, ¶ 14, 36 P.3d 597, 601 (Wyo. 2001)) (emphasis added). In the case of Mr. Castellanos, the district court was not in a position to make a competency determination simply upon receipt of the State Hospital's report. Defense counsel contested the State Hospital's findings and requested a second evaluation, and the district court found that the defense had shown good cause for the second evaluation. In keeping with Wyo. Stat. Ann. § 7-11-303, the court then ordered the second evaluation.[5]

[¶56] It was not until the defense withdrew its request for a second evaluation that the district court was in a position to determine Mr. Castellanos' competency to proceed, which the court did on March 22, 2013, when it determined that Mr. Castellanos was competent to proceed. Until that point, the proceedings related to Mr. Castellanos' competency remained pending.

---

[5] The statute governing mental competency evaluations provides:

> The clerk of court shall deliver copies of the report to the district attorney and to the accused or his counsel. The report is not a public record or open to the public. After receiving a copy of the report, both the accused and the state may, upon written request and for good cause shown, obtain an order granting them an examination of the accused by a designated examiner of their own choosing. For each examination ordered, a report conforming to the requirements of subsection (c) of this section shall be furnished to the court and the opposing party.

Wyo. Stat. Ann. § 7-11-303(d) (LexisNexis 2015).

[¶57] The facts of this case are analogous to those this Court addressed in *Potter v. State*, 2007 WY 83, 158 P.3d 656 (Wyo. 2007). In *Potter*, the defendant entered a plea of not guilty by reason of mental illness and claimed he was not competent to proceed. *Potter*, ¶ 5, 158 P.3d at 659. This occurred on October 21, 2004, and on October 25, 2004, the district court suspended proceedings pending a competency evaluation. *Id.*, ¶¶ 5-6, 158 P.3d at 659. On November 23, 2004, the defendant filed a speedy trial demand and a motion withdrawing his request for a competency evaluation and requesting that the case be set for a re-arraignment on his change of plea. *Id.*, ¶ 7, 158 P.3d at 659. The court held a hearing and directed the parties to provide additional briefing. *Id*.

[¶58] On January 6, 2005, the district court in *Potter* held another hearing and received expert testimony that the defendant was competent to proceed. *Potter*, ¶ 25, 158 P.3d at 662-63. The district court agreed with the psychologist and declared the defendant competent to proceed. *Id*. During the hearing, though, another issue arose concerning the defendant's ability to present evidence of his mental state at trial. *Id.*, ¶ 26, 158 P.3d at 663. The court ordered additional briefing on the question and scheduled additional argument on the question for January 20, 2005. *Id.*, ¶ 27, 158 P.2d at 663. In light of these proceedings, we held that even though the court had received expert testimony that the defendant was competent to proceed, the defendant's mental status remained at issue at least until the January 20th hearing. *Id*. The Rule 48(b) exclusion for proceedings related to a defendant's mental illness or deficiency therefore excluded the entire period from October 21, 2004 through January 20, 2005 from the 180-day calculation.[6] *Id*.

[¶59] Similarly, in this case, Mr. Castellanos' competency to proceed remained an issue, and the proceedings related to his competency remained pending, until the district court accepted the State Hospital's findings and declared him competent to proceed on March 22, 2013. We thus conclude that the period of delay covered by proceedings related to Mr. Castellanos' competency to proceed was August 14, 2012 to March 22, 2013, and that period is excluded from the 180-day calculation pursuant to Rule 48(b)(3)(A).

[¶60] This brings us to the remaining delay before the third trial date, the period of March 23, 2013 to September 3, 2013. Mr. Castellanos contends this period must be counted against the 180-day clock because Mr. Castellanos objected to any continuance and the district court did not make a motion to continue the trial in the due administration of justice. In so contending, Mr. Castellanos argues that in *Detheridge v. State*, 963 P.2d 233 (Wyo. 1998), this Court interpreted Rule 48(b) to require a formal motion to continue

---

[6] The Court in *Potter* went on to declare the period between January 20, 2005 and June 7, 2005 also excluded from the speedy trial clock because the defendant's mental status was still at issue and it remained at issue until the district court made its final determination regarding the defendant's mental status on June 7, 2005. *Potter v. State*, ¶ 30, 2007 WY 83, 158 P.3d 656, 664 (Wyo. 2007).

and findings that a continuance is required in the due administration of justice before a continuance may be granted over the objections of a defendant. We again disagree.

[¶61] In *Detheridge*, the defendant filed a speedy trial demand and the district court set an initial trial date in compliance with Rule 48. *Detheridge*, 963 P.2d at 234. Thereafter, the defendant filed a motion to dismiss based on a constitutional challenge to the statute under which he was charged. *Id*. While that motion was pending, the defendant's trial date passed without entry of a continuance or a new setting. *Id*. After the motion was decided, the district court still did not set a new trial date. *Id*. Eventually, with only a few days remaining on the Rule 48 clock, the State filed a motion requesting a trial setting. *Id*. The request did not include a motion to continue or an explanation for the delay. *Id*. The district court did not set a trial date, and nothing was done on the case until the defendant filed a motion to dismiss for lack of a speedy trial. *Id*. The district court denied the motion and then set a trial date. *Id*.

[¶62] We held that the defendant's right to a speedy trial was violated based on the district court's clear violation of Rule 48. *Detheridge*, 963 P.2d at 236. We explained:

> Despite Detheridge's written demand for a speedy trial, neither the district court nor the prosecution took any steps to reset the trial date, file a request for continuance, state the reasons why a continuance was necessary, or even grant a continuance prior to the conclusion of the 120-day period.
>
> It was incumbent upon the State and the district court, after Detheridge's initial demand, to take the minimal steps necessary to secure compliance with the requirements of W.R.Cr.P. 48.

*Detheridge*, 963 P.2d at 236.

[¶63] Our holding in *Detheridge* did not impose a set of specific procedural requirements to which a court must adhere in re-setting a trial date, but instead admonished the "callous disregard" of Rule 48. *See Germany v. State*, 999 P.2d 63, 67 (Wyo. 2000) (distinguishing *Detheridge* because the facts did not "evince the callous disregard of the speedy trial rule illustrated in *Detheridge*"). Our concern was not with the mechanics of a trial court's setting of a trial date, but rather with the court's attention to the grounds on which a trial date may be continued beyond the 180-day mark.

[¶64] There is no question in this case that in resetting the trial date after Mr. Castellanos' competency proceedings voided the August 14, 2012 setting, the district court acted with due regard for Rule 48's requirements. The court recognized that finding space in its calendar for a four-week trial would be difficult, and rather than

23

waiting for a motion, it attempted to minimize the delay by *sua sponte* setting a scheduling conference before the suspension of proceedings had even been lifted. The court then picked the earliest possible date that would accommodate a four-week trial and allow the court to complete the necessary pretrial requirements, such as summoning the jury panel and issuing juror questionnaires.

[¶65] As a practical matter, a trial cannot be set to begin the moment a suspension of proceedings is lifted. We recognized this in *Rodgers v. State,* 2011 WY 158, 265 P.3d 235 (Wyo. 2011). In *Rodgers*, the defendant's trial was scheduled to begin on the 180-day deadline. *Rodgers*, ¶ 30, 265 P.3d at 243. Five days before the scheduled trial date, though, the district court suspended proceedings at defense counsel's request for an evaluation of the defendant's mental competency to proceed. *Id.*, ¶ 13, 265 P.3d at 239. After the evaluation was received and the defendant was declared competent to proceed, the court set a new trial date, with the trial to begin in about three months.[7] *Id*. We found no Rule 48(b) violation, reasoning:

> Once the district court postponed the original trial date, it would have been a practical impossibility for Rodgers' trial to be held within the five days remaining on the 180–day speedy trial clock of Rule 48(b)—witnesses had to be subpoenaed, a new jury panel had to be summoned, and time had to be afforded for Rodgers to contest the forensic evaluation findings and for the district court to make a final determination concerning Rodgers' fitness to proceed. In our view, Rule 48(b) anticipates such a situation. It allows for a continuance of the 180–day limit if required for the due administration of justice and there is no resulting prejudice to the defendant. W.R.Cr.P. 48(b)(4)(B)(iii).

*Rodgers*, ¶ 30, 265 P.3d at 243.

[¶66] Mr. Castellanos has not shown a disregard for the requirements of Rule 48 in the district court's setting of the September 3, 2013, trial date or that he suffered substantial prejudice as a result of that setting. We find that the setting was made in the due administration of justice and thus conclude that the delay from March 22, 2013, when the suspension of proceedings was lifted, to September 3, 2013 does not count against the 180-day deadline.

3. **Third Delay of Trial: September 3, 2013 to February 18, 2014**

---

[7] Notably, in the factual account of this resetting, there is no indication the setting was preceded by a motion to continue or accompanied by a specific finding that the setting was in the due administration of justice. *Rodgers v. State*, ¶ 13, 2011 WY 158, 265 P.3d 235, 239 (Wyo. 2011).

[¶67] The final delay in Mr. Castellanos' trial occurred when on June 4, 2013, Defense Team Three moved to continue the trial for a period of six months to allow it additional time to prepare for the trial and in particular to prepare for the trial's penalty phase. Mr. Castellanos again objected to this continuance. The district court granted the requested continuance on July 8, 2013 and ruled that it was granting the continuance on its own motion in the due administration of justice. In doing so, the court acknowledged Mr. Castellanos' objection but found that Mr. Castellanos had not shown he would be substantially prejudiced by the delay. Mr. Castellanos concedes that the delay between the September 3, 2013 setting and the February 18, 2014 setting was pursuant to a proper Rule 48(b)(4)(B)(iii) continuance and does not count against the 180-day speedy trial clock.[8]

[¶68] Mr. Castellanos' original trial date of March 20, 2012, was 169 days after his arraignment and complied with the 180-day limit set by Rule 48(b). The delays in commencing trial that occurred after that setting do not count against the 180-day limit, and Mr. Castellanos was therefore brought to trial within the time specified by Rule 48(b). We thus find no Rule 48(b) violation.

## B.    Constitutional Analysis

[¶69] We turn next to the question of whether Mr. Castellanos' Sixth Amendment constitutional right to a speedy trial was violated. We have summarized our required analysis:

> The Sixth Amendment guarantees every criminal defendant a speedy trial. U.S. Const. amend. VI; *Humphrey v. State*, 2008 WY 67, ¶ 20, 185 P.3d 1236, 1243 (Wyo.2008). For its

---

[8] Although Mr. Castellanos concedes that this period does not count against the 180-day clock, he alludes to some sort of ulterior motive in the contemporaneous reassignment of the case to another judge. Specifically, in his brief on appeal, Mr. Castellanos asserts:

> The trial court's July 8, 2013, *Order Continuing Trial* indicated there was a need to continue the trial date due to defense counsel not being ready for trial; however, the immediate reassignment of the case to another judge showed there was a possible additional motive to allow a new judge to schedule the trial in accordance with its own docket.

It is not clear to this Court what Mr. Castellanos is suggesting with respect to the motive to have his case scheduled on another judge's docket. If the suggestion is that this was a way to further delay the trial, the record does not support the assertion. Judge Arnold granted the six-month continuance and then assigned the case to Judge Campbell. Judge Campbell set a February 18, 2014 trial date, which was about a half of a month earlier than the six months granted, and there were no further delays. The trial began on that date.

constitutional speedy trial analysis, this Court adopts the four-factor test articulated in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972); *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo.1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). The *Barker* test requires balancing (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Boucher v. State*, 2011 WY 2, ¶ 9, 245 P.3d 342, 348 (Wyo.2011); *Strandlien v. State*, 2007 WY 66, ¶ 6, 156 P.3d 986, 990 (Wyo.2007). No individual factor is dispositive. *Boucher*, 2011 WY 2, ¶ 9, 245 P.3d at 348. The ultimate "inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, 26 (Wyo.2001) (quoting *Wehr v. State*, 841 P.2d 104, 112 (Wyo.1992)).

*Ortiz*, ¶ 39, 326 P.3d at 893.

## 1.     Factor One: Length of Delay

[¶70]  For purposes of a constitutional analysis, "the speedy trial clock begins to run at the time of arrest, information, or indictment, whichever occurs first." *Ortiz*, ¶ 40, 326 P.3d at 893 (citing *Boucher*, 2011 WY 2, ¶ 10, 245 P.3d at 349). "The right to a speedy trial 'continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment.'" *Ortiz*, ¶ 40, 326 P.3d at 893 (quoting *Berry*, 2004 WY 81, ¶ 32, 93 P.3d at 231).

[¶71]  Mr. Castellanos was arrested on August 23, 2011, and convicted on March 7, 2014, resulting in a delay of 927 days.  This delay is presumptively prejudicial and requires consideration of the remaining *Barker* factors.  *See Durkee v. State*, 2015 WY 123, ¶ 15, 357 P.3d 1106, 1111 (Wyo. 2015) (citing cases in which this Court found that delays of 562, 720 and 887 days are presumptively prejudicial and require analysis of the other three *Barker* factors).

## 2.     Factor Two: Reason for Delay

[¶72]  The second factor in the *Barker* analysis requires that we examine which party was responsible for the delay in bringing the defendant to trial. *Miller v. State*, 2009 WY 125, ¶ 40, 217 P.3d 793, 805 (Wyo. 2009).  "We weigh the delays caused by the State against those caused by the defendant, keeping in mind it is the State's burden to bring a defendant to trial in a timely manner and it must show that the delays were reasonable

26

and necessary." *Durkee*, ¶ 16, 357 P.3d at 1112 (citing *Harvey v. State*, 774 P.2d 87, 95 (Wyo. 1989)). "Delays attributable to competency evaluations fall into the 'neutral' category in the *Barker* balancing test." *Miller*, ¶ 41, 217 P.3d at 805 (citing *Potter*, ¶¶ 30, 37, 158 P.3d at 664–65).

[¶73] With regard to delays caused by the defense, we have held that "[u]nquestionably, delays attributable to the defendant may disentitle him to speedy trial safeguards." *Miller*, ¶ 40, 217 P.3d at 805 (quoting *Berry*, ¶ 35, 93 P.3d at 232). Delays assigned to the defendant include "delays attributable to changes in defense counsel, to the defendant's requests for continuances, and to the defendant's pretrial motions." *Durkee*, ¶ 16, 357 P.3d at 1112 (quoting *Ortiz*, ¶ 42, 326 P.3d at 893). Because an attorney "is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." *Vermont v. Brillon*, 556 U.S. 81, 91, 129 S.Ct. 1283, 1291, 173 L.Ed.2d 231 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)) (footnote omitted); *see also Berry*, ¶ 35, 93 P.3d at 232 (noting that although delay caused by change in counsel due to counsel's hospitalization was beyond defendant's control, the delay nonetheless weighed against defendant).

[¶74] With regard to delays attributable to the State, we have said:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as missing witnesses, should serve to justify appropriate delay. *Wehr v. State*, 841 P.2d 104, 112–113 (Wyo.1992), quoting *Barker*.

*Durkee*, ¶ 16, 357 P.3d at 1112 (quoting *Berry*, ¶ 36, 93 P.3d at 232).

a.  **First Continuance**

[¶75] The delays in this case started with the following defense motions: a motion to continue the preliminary hearing to allow for discovery; motions to continue the arraignment; and a motion to extend the deadline for the State to declare whether it would seek the death penalty. As a result of these delays, the State did not file its death penalty election until December 27, 2011, just over four months after Mr. Castellanos' arrest. Shortly after the State made its death penalty election, on January 6, 2012, the defense filed a motion to continue the trial for a period of eighteen months to allow time both for trial preparation and for Defense Team One to obtain capital case training. The district

court granted that continuance but not an eighteen-month continuance. It allowed a continuance to August 14, 2012—or close to a five-month continuance.

[¶76] Under our usual analysis, these delays caused by: 1) defense motions to continue the preliminary hearing and arraignment; 2) a defense motion to extend the deadline for the State's death penalty election; and 3) a defense motion to continue, are all attributable to the defense. Mr. Castellnos contends, however, that the entire period from August 23, 2011 to August 14, 2012, a period of 357 days, should be treated as a delay caused by the appointment of counsel not qualified to try a capital case, which he asserts resulted from a systemic breakdown of the Public Defender's Office. From this, Mr. Castellanos argues the delay must be attributed in its entirety to the State.

[¶77] Mr. Castellanos' argument that the delay from August 23, 2011 to August 14, 2012 must be attributed to the State can be broken down into several increments. First, Mr. Castellanos contends that when a public defender assigns counsel to a case, it is performing an administrative function and thus acting under color of state law. Second, Mr. Castellanos asserts that the Wyoming Public Defender's Office was insufficiently staffed to assign counsel to his case that was qualified to try a capital case. Third, Mr. Castellanos argues that the Public Defender's inability to assign capital case-qualified counsel on the date of his arrest caused the entire 357-day delay between the date of his arrest on August 23, 2011, and the new trial setting of August 14, 2012.

[¶78] The record does not support Mr. Castellanos' argument. First, while this case clearly had the potential to become a capital case, it was not a capital case when Mr. Castellanos was arrested. As a result of defense motions delaying the State's death penalty election—motions to which Mr. Castellanos did independently object—the case did not become a capital case until December 27, 2011. Within two months of the State's death penalty election, the Public Defender's Office assigned capital case-qualified counsel. The record further shows that Defense Team Two and Defense Team Three, both of which were capital case-qualified, encountered significant difficulties in completing the defense mitigation investigation and could not have been prepared to go to trial on March 20, 2012, following the State's December 27, 2011, death penalty election. Thus, even had Defense Team One been capital case-qualified, the defense would not have been prepared to try the case less than three months after the State's election. The record simply does not support Mr. Castellanos' assertion that the delay between his arrest and the second trial setting is attributable to the assignment of counsel that was not capital case-qualified.

[¶79] The record likewise provides no support for the assertion of a systemic breakdown in the Public Defender's Office. At the outset of the case, the Public Defender assigned counsel she considered highly qualified and properly experienced to handle a case involving the serious charges filed against Mr. Castellanos. Additionally, she recognized the potential for the case to become a capital case and immediately retained a mitigation

expert. Finally, she herself is qualified to supervise the representation in capital cases and was serving in a supervisory role in this case. On this record, we are unable to find a deficiency in the functioning of the Public Defender's Office or a systemic breakdown.[9]

[¶80] The delays in this case up to the date of the State's death penalty election resulted from defense motions. The State did not contribute to any of these delays, including the extension of time to make its death penalty election. Likewise, the delay caused by the first defense continuance is attributable to the defense. The need for the continuance grew from the legitimate need for additional time to prepare for a case that required investigation of defenses for both guilt and penalty phases of the trial. Moreover, the State again contributed in no way to this delay and in fact objected to the continuance. For these reasons, we assign the early delays and the delay caused by the first continuance to the defense and weigh that delay against Mr. Castellanos' speedy trial claim.

**b.    Delays Relating to Competency Evaluations**

[¶81] Mr. Castellanos' competency evaluations required a suspension of proceedings and a new trial date. The suspension of proceedings created a delay from August 14, 2012 to March 22, 2013, and the logistical difficulties of scheduling the trial required that the new trial date be set for September 3, 2013, five-plus months from the district court's order declaring Mr. Castellanos competent to proceed. Delays attributable to competency evaluations are considered neutral in the assignment of responsibility for the delay. *Miller*, ¶ 41, 217 P.3d at 805. Delays caused by an overcrowded court docket are assigned to the State, but are not weighted heavily. *Durkee*, ¶ 24, 357 P.3d at 1113.

[¶82] Mr. Castellanos again argues that we should deviate from our usual assignment of responsibility for delay and assign the entirety of the delay, from August 14, 2012 to September 3, 2013, to the State. We again disagree.

[¶83] Mr. Castellanos first argues the delay caused by the competency evaluations should be attributed to the State because defense counsel's request for the evaluations was a ruse to obtain a continuance to which Mr. Castellanos would not agree. We have reviewed the State Hospital's competency report, which detailed the communications from Mr. Castellanos that caused defense counsel to question his competency, and we find that defense counsel had a legitimate basis to request the first competency

---

[9] Because the record does not support a finding that the delay between August 23, 2011 and August 14, 2012 was caused by the assignment of counsel or a systemic breakdown in the Public Defender's Office, we need not resolve the legal question of whether a public defender is acting under color of state law when assigning counsel to a case or the legal question of when a systemic breakdown in a public defender's office will alter our analysis of who is responsible for the delay in bringing a case to trial.

evaluation.[10]  Defense counsel's request for a second competency evaluation was supported by a report from a mental health professional that had recently examined Mr. Castellanos.  Our review of the defense request for a second evaluation thus likewise persuades us that the request was not a ruse.  Because we have found that defense counsel had legitimate grounds for its competency evaluation requests, we need not address the merits of the suggestion that in the event of a ruse, the delay must be assigned to the State.

[¶84] Mr. Castellanos next argues that responsibility for the delay caused by the competency evaluations should shift to the State because the State Hospital took too long to complete its evaluation and report, requiring two thirty-day extensions to complete its work.  The sole authority Mr. Castellanos cites in support of this argument is a federal case interpreting a provision of the federal Speedy Trial Act that specifically set time limits on completing competency evaluations.  *See United States v. Dellinger*, 980 F.Supp. 2d 806 (E.D. Mich. 2013).  We have no similar statutory requirement, and we find no inherent unreasonableness in the time it took the State Hospital to complete its evaluation and report.  We thus reject this proposed shifting of assignment for the delay to the State.

[¶85] The delay from August 12, 2012 to March 22, 2013 for Mr. Castellanos' competency proceedings is a neutral delay.  The delay from March 22, 2013 to September 3, 2013, attributable to finding a four-week opening in the district court's docket and accommodating the trial logistics, is assigned to the State but not weighted heavily.

c.    **Delay Caused by Final Continuance**

[¶86]  The final delay we must consider is the delay from September 3, 2013 to March 7, 2014.  This delay was caused by a defense continuance, to which the State objected.  The reason for the continuance was again defense counsel's legitimate need for additional time to prepare for trial, to prepare a defense mitigation case made difficult by the location of witnesses and records, and to secure the presence of defense mitigation witnesses.  Also contributing to the need for this continuance was the change in defense counsel and Mr. Castellanos' refusal to work with Defense Team Two or the defense mitigation expert from the date of Defense Team Two's request for a competency evaluation and until new counsel was appointed.  This delay is attributable to and must be assigned to the defense.  This delay weighs against Mr. Castellanos' speedy trial claim.

---

[10] Because the State Hospital's report is confidential pursuant to Wyo. Stat. Ann. § 7-11-303(d), we do not include the details of the statements Mr. Castellanos made to counsel that prompted their competency evaluation request.

### 3.      Factor Three: Defendant's Assertion of Right

[¶87] There is no question that Mr. Castellanos asserted his right to a speedy trial. Defense counsel notified the district court that Mr. Castellanos would not waive his speedy trial right as early as October 26, 2011, during the hearing on the defense motion to extend the deadline for the State's death penalty election. He then repeatedly asserted his right including in his objections to defense continuances. This factor weighs in favor of Mr. Castellanos' speedy trial claim.

### 4.      Factor Four: Prejudice to Defendant

[¶88] The fourth factor requires that we consider whether the delay prejudiced Mr. Castellanos. Our analysis requires that we consider: "(1) lengthy pretrial incarceration; (2) pretrial anxiety; and, (3) impairment of the defense." *Ortiz*, ¶ 59, 326 P.3d at 896 (quoting *Berry*, ¶ 46, 93 P.3d at 237). "Pretrial anxiety 'is the least significant' factor and because a 'certain amount of pretrial anxiety naturally exists,' an appellant must demonstrate that he suffered 'extraordinary or unusual' pretrial anxiety." *Potter*, ¶ 41, 158 P.3d at 666 (quoting *Whitney v. State*, 2004 WY 118, ¶ 54, 99 P.3d 457, 475 (Wyo. 2004)). "The impairment of defense factor is the most serious because it impacts the defendant's ability to prepare his case and skews the fairness of the entire system." *Durkee*, ¶ 37, 357 P.3d at 1116. Where a defendant is responsible for the delay, "he bears the burden of demonstrating actual prejudice." *Whitney*, ¶ 55, 99 P.3d at 475 (quoting *United States v. Lam*, 251 F.3d 852, 859–60, *amended by* 262 F.3d 1033 (9th Cir.), *cert. denied*, 534 U.S. 1013, 122 S.Ct. 503, 151 L.Ed.2d 413 (2001)); *see also Sisneros v. State*, 2005 WY 139, ¶ 28, 121 P.3d 790, 800 (Wyo. 2005) (that defendant's actions "led to a significant amount of the delay weighs against a finding of presumed prejudice" and defendant thus "has the burden of showing actual prejudice").

[¶89] The record supports Mr. Castellanos' claims of prejudice relating to his pretrial incarceration and his pretrial anxiety. His pretrial incarceration was 910 days, which undoubtedly resulted in a loss of relationships, employment, and assets. Mr. Castellanos also points to detailed record support relating to his pretrial anxiety. We find, and the State concedes, that these factors weigh in favor of Mr. Castellanos' speedy trial claim.

[¶90] We turn then to the question of whether the delay impaired Mr. Castellanos' defense. Our inquiry for this prong of the prejudice analysis is whether the delay resulted in a loss of evidence or impaired the defense by the "death, disappearance, or memory loss of witnesses for the defense." *Ortiz*, ¶ 62, 326 P.3d at 896. We find no impairment of Mr. Castellanos' defense and in fact conclude to the contrary that the delay worked to his benefit.

[¶91] In his brief on appeal, Mr. Castellanos cites to harms from: evidence that had not been tested as of September 13, 2013; a lack of access to fresh evidence; lost evidence; and inconsistencies accompanying changes in counsel. These are all bare allegations with no identification of evidence that was lost, stale or untested, no identification of the alleged inconsistencies stemming from changes in counsel, and no explanation of how any of this impaired the defense. These allegations are insufficient to establish impairment of Mr. Castellanos' defense. *See McEwan*, ¶ 28, 314 P.3d at 1168 (rejecting claim that 870-day delay impaired defense where defendant failed to identify unavailable witnesses, the nature of their anticipated testimony, or when they became unavailable); *Strandlien v. State*, 2007 WY 66, ¶ 18, 156 P.3d 986, 992 (Wyo. 2007) (rejecting claim that 762-day delay impaired defense where defendant failed to show further testing of destroyed blood sample would have yielded a lower BAC).

[¶92] The delay in bringing Mr. Castellanos to trial gave his defense team additional time to investigate and prepare his mitigation defense for the penalty phase of his trial and ensure the presence of important mitigation witnesses. This time plainly served to benefit Mr. Castellanos because his mitigation defense was successful and the jury elected not to impose the death penalty.

## 5.    Balancing of the Factors

[¶93] The State did not directly contribute to any delay in this case and objected to each defense continuance. The only delay we assign to the State is the delay associated with fitting Mr. Castellanos' lengthy trial into the court's docket, and that delay is not heavily weighted against the State. The majority of the delay in this case is attributable to the defense and in particular to the complexity of the defense mitigation case and its investigation, Mr. Castellanos' refusal to cooperate with Defense Team Two, and the second change in defense counsel. Additionally, although Mr. Castellanos vigorously asserted his right to a speedy trial, the delays in this case worked to his benefit.

[¶94] Balancing the *Barker* factors, we hold that there was no violation of Mr. Castellanos' right to a speedy trial. Although the delay in bringing Mr. Castellanos to trial was certainly long, most of that delay is attributable to the defense, and the benefits of the delay outweighed any prejudice to Mr. Castellanos. We conclude that the delay did not substantially impair Mr. Castellanos' right to a fair trial and was not unreasonable under the circumstances of this case. *See Durkee*, ¶ 51, 357 P.3d at 1118 ("Under *Barker,* the delay was not unreasonable, i.e., it did not substantially impair [the defendant's] right to a fair trial.").

## II.    Ineffective Assistance of Counsel Claim

[¶95] In his second claim of error, Mr. Castellanos argues that he was denied effective assistance of counsel because of Defense Team One's deficient performance. "Claims of

32

ineffective assistance of counsel involve mixed questions of law and fact and are reviewed *de novo*." *Rhodes*, ¶ 28, 348 P.3d at 413 (citing *Ortega-Araiza v. State*, 2014 WY 99, ¶ 5, 331 P.3d 1189, 1193 (Wyo. 2014)). An ineffectiveness of counsel claim requires that a defendant make certain showings:

> For [a defendant] to prevail on an ineffectiveness claim, he must first establish that trial counsel's performance was deficient. This requires a showing that counsel failed to render such assistance as would have been offered by a reasonably competent attorney. *Dettloff v. State*, 2007 WY 29, ¶ 18, 152 P.3d 376, 382 (Wyo.2007) (citing *Hirsch v. State*, 2006 WY 66, ¶ 15, 135 P.3d 586, 593 (Wyo.2006)). [The defendant] then must demonstrate that counsel's deficient performance prejudiced his defense. Under the prejudice prong, [the defendant] must demonstrate a reasonable probability exists that, but for counsel's deficient performance, the outcome of his trial would have been different. *Dettloff*, ¶¶ 18–19, 152 P.3d at 382. The failure to make the required showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Id*.

*Sanchez v. State*, 2011 WY 77, ¶ 40, 253 P.3d 136, 147 (Wyo. 2011); *see also McGarvey v. State*, 2014 WY 66, ¶ 14, 325 P.3d 450, 455 (Wyo. 2014) (to make required showing of prejudice, defendant must show that, absent alleged deficiency, it is reasonably probable that the result of his trial would have been more favorable to him).

[¶96] We have further stated:

> An ineffective assistance claim has a performance component and a prejudice component. The components are mixed questions of fact and law. A court does not have to approach the inquiry by addressing performance first and prejudice second. A court does not have to address both components if the appellant makes an insufficient showing on one. If a court determines it is easier to dispose of the claim because sufficient prejudice is lacking, the court may do so.

*Eaton v. State*, 2008 WY 97, ¶ 132, 192 P.3d 36, 92 (Wyo. 2008); *see also Hibsman v. State*, 2015 WY 122, ¶ 15, 355 P.3d 1240, 1244 (Wyo. 2015) (quoting *Sen v. State*, 2013 WY 47, ¶ 39, 301 P.3d 106, 121 (Wyo. 2013)) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

[¶97] Mr. Castellanos argues that Defense Team One was ineffective because 1) the attorneys on the team lacked capital case training and experience; 2) the attorneys were unprepared at the arraignment hearing; 3) the attorneys failed to submit a mitigation letter to the prosecutor; and 4) the attorneys were unprepared for a hearing on their motion to disqualify the special prosecutor assigned to the case. We find it unnecessary to address the first prong of the ineffectiveness standard, whether Defense Team One's performance was deficient, because Mr. Castellanos has not established that he was prejudiced by any of these alleged deficiencies in Defense Team One's performance.

[¶98] In addressing prejudice, Mr. Castellanos alleges that Defense Team One's deficient performance caused delay which led to lost and stale evidence. In making this argument, Mr. Castellanos does not identify what evidence was lost or became stale or how it affected the outcome of his trial. With regard to the deficiencies in counsel's performance at the arraignment hearing and the hearing on the motion to disqualify, Mr. Castellanos fails altogether to allege any effect on the outcome of his trial. With respect to the failure of Defense Team One to submit a mitigation letter to the prosecutor, Mr. Castellanos offers only speculation that the submittal of such a letter may have allowed the case to proceed as a non-capital case and allowed counsel to focus more on his defense to the crime itself rather than mitigation for the penalty phase. Moreover, the argument is made without any identification of evidence the defense was unable to present as a result of its attention to the mitigation evidence.

[¶99] We have repeatedly stated that a claim of prejudice must be supported by more than bald assertions or speculation. *Galbreath v. State*, 2015 WY 49, ¶ 10, 346 P.3d 16, 20 (Wyo. 2015) (bald assertions that prejudice occurred insufficient to demonstrate prejudice); *Peterson v. State*, 2012 WY 17, ¶ 10, 270 P.3d 648, 653 (Wyo. 2012) ("In order to satisfy his burden of proving counsel rendered constitutionally ineffective assistance, [defendant] must provide more than mere speculation or equivocal inferences."). In this case, bald assertions and speculation are all Mr. Castellanos offers in the way of prejudice and we therefore reject his ineffective assistance of counsel claim.

### III. Jury Selection Claim

[¶100] In his final claim of error, Mr. Castellanos contends that the district court abused its discretion in denying Mr. Castellanos' challenges for cause against two jurors, forcing him to use peremptory challenges that he would otherwise have used on two other jurors who remained on the jury. We find no reversible error.

[¶101] Mr. Castellanos challenged Juror No. 392 and Juror No. 361 for cause based on statements they made during jury selection that suggested they would have difficulty imposing a life sentence rather than the death penalty if they found Mr. Castellanos guilty of first degree murder. Mr. Castellanos then used peremptory challenges to have both

jurors dismissed.  After the jury was selected, counsel for Mr. Castellanos objected to the panel in the following exchange with the court:

> MS. OLSON:          As Your Honor will recall, we raised challenges for cause to jurors 392, [name omitted]; 361 [name omitted]. * * *
> THE COURT:          Uh-huh.
> MS. OLSON:          And with regard to those challenges, Your Honor, particularly with regard to [392 and 361], had those been granted, and I believe the record will bear out that both were good challenges based on death penalty and mitigation impaired situation, we did have two other jurors that we would have used peremptory challenges on, and were unable to do so because of the denial of those challenges.
> THE COURT:          Go ahead and name those jurors.
> MS. OLSON:          One of those was [name omitted], 153.  While [153] gave very middle of the road answers to many of the questions, we were unfortunately but normally concerned that he has a wife who formerly worked in the District Attorney's Office here, and I believe the mother still works at the District Attorney's Office here, which is where physically Mr. Schafer's office, conference room, whatever he's using is located.  So for those reasons, we would have stricken [153], but did not have the ability to do so in this situation.
> We also would have stricken juror number 420, [name omitted].  We found [420's] answer to our repetitive questions to be not as we would like them to be with regard to his viewpoints on the death penalty, his ability to be very middle of the road and open to mitigation.
> And so those two jurors, Your Honor, we would have stricken had the challenges to [361] and [392] been granted.
> THE COURT:          Very well.
> MS. OLSON:          So in that sense, we cannot accept the jury as a panel with this situation, Your Honor.

[¶102] We have articulated the following analysis and standard of review for jury selection claims:

> The test we apply to determine if a prospective juror should be dismissed for cause is whether or not that juror would be able to render a

35

fair and impartial verdict based upon the evidence adduced at trial and the court's instructions. *Kerns v. State*, 920 P.2d 632, 635 (Wyo.1996) (citing *Munoz v. State*, 849 P.2d 1299, 1302 (Wyo.1993)). The question of whether a juror is biased is a question of fact reserved for the trial court. *Id.*; *Jahnke v. State*, 682 P.2d 991, 1000 (Wyo.1984) [*overruled in part on other grounds by Vaughn v. State*, 962 P.2d 149 (Wyo.1998) ]. We review the trial court's decision for an abuse of discretion. *Kerns*, 920 P.2d at 635; *Munoz*, 849 P.2d at 1302.

*Klahn v. State*, 2004 WY 94, ¶ 9, 96 P.3d 472, 478 (Wyo.2004). We defer to the judgment of the district court because it can personally observe the demeanor of the jurors and the tenor of their responses. *Schwenke v. State*, 768 P.2d 1031, 1033 (Wyo.1989); *Summers v. State*, 725 P.2d 1033, 1041 (Wyo.1986). Even where a prospective juror has previously formed or stated an opinion as to the defendant's guilt, the ultimate question is whether the juror can set aside that opinion and impartially determine the case based upon the evidence. Wyo. Stat. Ann. § 7–11–106 (LexisNexis 2007); *Duke v. State*, 2004 WY 120, ¶ 23, 99 P.3d 928, 939 (Wyo.2004); *Klahn*, 2004 WY 94, ¶ 10, 96 P.3d at 479; *Sides v. State*, 963 P.2d 227, 231 (Wyo.1998).

*Carothers v. State*, 2008 WY 58, ¶ 4, 185 P.3d 1, 4 (Wyo. 2008).

[¶103] We have also addressed the circumstance where a challenge for cause of a juror is denied and a peremptory challenge is then used to dismiss the challenged juror:

We hold that absent a showing of prejudice a defendant's use of peremptory challenge to cure a trial court's erroneous denial of a challenge for cause does not violate any statutory or constitutional right and cannot constitute reversible error.

*Klahn*, ¶ 21, 96 P.3d at 484.

[¶104] To show prejudice, a defendant must show that his use of a peremptory challenge to cure the denial of the challenge for cause was harmful error, meaning "there is a reasonable possibility that the verdict might have been more favorable to the defendant" if he had not been forced to so use the peremptory challenge. *Klahn*, ¶ 20, 96 P.3d at

36

483. To make that showing, the defendant must demonstrate "that the jury was not impartial and that he was denied a fair trial." *Id.*, ¶ 20, 96 P.3d at 484.

[¶105] Mr. Castellanos has not made the showing required for reversible error. First, Mr. Castellanos passed both Juror No. 153 and Juror 420 for cause. We have recognized that this is certainly a strong indication of the jurors' impartiality:

> There is nothing in the record to indicate that any of the jurors who served on the panel were not qualified to serve. All of the jurors—including the two identified by Klahn as likely recipients of a peremptory challenge if he had had one available—were passed for cause. We find no abuse of discretion by the district court in those determinations. Since there is no demonstration by Klahn that the jury was not impartial and that he was denied a fair trial, he cannot meet his burden of showing harmful error[.]

[¶106] Additionally, with respect to Juror No. 420, Mr. Castellanos' stated concern was the juror's willingness to consider mitigation evidence. Given that the jury did not impose the death penalty, Mr. Castellanos' concerns did not come to pass and he suffered no harm from the presence of this juror on the jury.

[¶107] With respect to Juror No. 153, Mr. Castellanos alleges that his presence on the jury was harmful because Juror No. 153's wife used to work for the Laramie County District Attorney's Office and his mother still worked there, suggesting a potential bias, and he indicated on his jury questionnaire that according to what he had heard about the case, it sounded like Mr. Castellanos was guilty. Mr. Castellanos further points out that Juror No. 153 served as jury foreman, making his presence particularly harmful. We find these allegations insufficient to show that Juror No. 153 was unable to render a fair and impartial verdict.

[¶108] Juror No. 153's wife stopped working at the Laramie County District Attorney's Office in 2009, and his mother's current employment there is a tenuous connection on which to find bias. That connection is made even more tenuous by the fact that the Laramie County office was not prosecuting the case. The Natrona County District Attorney was serving as special prosecutor, and the Laramie County office simply had no role. With respect to Juror No. 153's statement on the jury questionnaire, his answers during *voir dire* alleviated concerns regarding his impartiality. He indicated that based on his background as an auditor, he tends "not to make a decision or form an opinion on something until I – until I see data or evidence to, you know, help me in that decision." He also responded that he did not expect Mr. Castellanos to prove anything to him when asked that question. Given this record, Mr. Castellanos has not shown that Juror 153 was unable to render a fair and impartial verdict.

[¶109] Mr. Castellanos did not make a showing that Jurors Nos. 153 and 420 were unable to render a fair and impartial verdict. He therefore has failed to establish reversible error in the forced use of his peremptory challenges to remove jurors he contended should have been dismissed for cause.[11]

## CONCLUSION

[¶110] Mr. Castellanos' right to a speedy trial was not violated by the delay in bringing him to trial, and we also reject his claims of ineffective assistance of counsel and errors in the jury selection process. Affirmed.

---

[11] Because we find no prejudice from the presence of Jurors 153 and 420 on the jury, we need not address whether the district court abused its discretion in denying the defense challenges for cause of Jurors 392 and 361.