# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 63

APRIL TERM, A.D. 2024

June 12, 2024

VICTORIA LOEPP,

Appellant
(Plaintiff),

v.

RYAN L. FORD; SCOTT C. MURRAY; and
WILLIAMS, PORTER, DAY & NEVILLE,
P.C.,

Appellees
(Defendants).

S-23-0248

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*
    Donna D. Domonkos, Domonkos & Thorpe, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
    Anna M. Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming.

*Before FOX, C.J., and \*KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Victoria Loepp appeals the district court's summary judgment order that dismissed her legal malpractice claims and all other claims she brought against her former counsel (Appellees).  The district court's summary judgment decision was based on its concurrent order striking her malpractice expert.  Because the district court did not fully analyze the proffered expert's reliability and fitness under W.R.E 702, and because we find no other basis on which to affirm the court's summary judgment order, we reverse and remand.

## *ISSUE*

[¶2]    The issue presented is whether an out-of-state expert may provide opinion testimony about the standard of care in legal malpractice actions in Wyoming.

## *FACTS*

[¶3]    This case originated with an inheritance dispute.  Angela Gothberg had several children, including the two daughters central to this appeal: Ms. Loepp and Ms. Scott.  Ms. Gothberg died in 2012.  As part of the settlement of her estate, Ms. Loepp received a certain house in Casper.  At the time of that transfer, the house was occupied by Ms. Scott who had been using it rent-free to operate a business.  Ms. Loepp and Ms. Scott orally agreed Ms. Loepp would sell the house to Ms. Scott for $75,000, with Ms. Scott making full payment by the end of 2013.  The money was not paid, and for several years the sisters periodically made new agreements, some of which were in writing.  However, Ms. Scott never came through with the funds to buy the house.  In 2018, Ms. Loepp engaged a real estate agent to help sell the property.  Ms. Scott responded by filing one of their prior written agreements in the Natrona County real property records which, according to Ms. Loepp, created a cloud on title.  Ms. Scott also did not cooperate with the realtor's efforts to show the property to potential buyers.

[¶4]    Ms. Loepp hired attorney Ryan Ford of Williams, Porter, Day & Neville, P.C. to help.  Mr. Ford sent Ms. Scott a demand letter.  He also initiated an eviction by serving a Notice to Quit.  He ultimately negotiated with Ms. Scott's attorney to settle the dispute by Ms. Loepp selling the house to Ms. Scott for $90,000.  On March 22, 2019, the title company managing the closing of the transaction received the funds from Ms. Scott.  The next day, Ms. Loepp notified Mr. Ford that she would not accept the money or settlement terms.  Ms. Loepp declined Mr. Ford's advice to abide by the settlement agreement, and Mr. Ford withdrew from representation.

[¶5]    Scott Murray replaced Mr. Ford as Ms. Loepp's counsel. He prepared a complaint to file against Ms. Scott for a declaratory judgment and to quiet title.  However, before that complaint was filed, Ms. Scott sued Ms. Loepp for breach of contract and related claims, seeking specific performance of the agreement to sell her the house.  In April 2020, the

1

district court entered summary judgment in favor of Ms. Scott. The remainder of Ms. Scott's suit settled when Ms. Loepp agreed to transfer the property to Ms. Scott in exchange for the $90,000.

[¶6]    Two years later, Ms. Loepp filed this legal malpractice action against Mr. Ford, Mr. Murray, and their firm. She alleged multiple instances of malpractice. She also asserted claims for breach of contract, breach of fiduciary duty, and gross negligence.

[¶7]    Ms. Loepp represented herself before the district court. She hired Michael Watters, an attorney from California, as her expert witness. His expert report identified the applicable standard of care as that recited in the Wyoming Civil Pattern Jury Instruction,[1] and described more than a dozen instances and categories of conduct that breached that standard of care.[2] Mr. Watters based his opinions on his knowledge and experience as a trial attorney, as a practice group leader and managing partner in his firm, as a torts professor, and as a frequent expert witness in fee disputes. To support his assertions that the Appellees misapplied contract law, Mr. Watters included a legal memo which cited Wyoming case law and referenced the Restatement of Contracts.

[¶8]    Appellees moved to strike Mr. Watters, asserting he was not a qualified expert because he was not familiar with legal practice in Wyoming. They concurrently moved for summary judgment on several grounds independent of their motion to strike. Responding to Appellees' motion to strike, Ms. Loepp pointed to the requirement that the Court consider the reliability and fitness of her expert pursuant to W.R.E. 702. She then pointed to her expert's knowledge and extensive experience, as reflected in his report; the similarities between certain legal rules across jurisdictions; and his supplemental research about Wyoming's practice of law, supported by an affidavit from Mr. Watters about the similarities between states. She also pointed to the important distinction between admissibility and the weight of the evidence.

---

[1] "It is a lawyer's duty to possess and exercise that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in Wyoming." Wyo. Civ. Pattern Jury Instruction 14.16 (2024).

[2] The alleged instances of malpractice included: the decision to begin an eviction against Ms. Scott; the use of an unreasonably short time for compliance in the demand letter sent to Ms. Scott; concessions about the Loepp–Scott contract that limited Ms. Loepp's ability to contest the enforceability of that contract; failure to file the breach of contract action first, leaving Ms. Loepp in a defensive position in the litigation; failing to make adequate objections during a deposition; working too long on a motion for summary judgment; moving for summary judgment when there were disputed issues of material fact; misleading Ms. Loepp about the status of the case including the timeframe for the summary judgment motion; concessions and misrepresentation of facts during the summary judgment proceedings; not advising Ms. Loepp of her appeal rights after the summary judgment; a potential conflict of interest by the firm representing a real estate broker involved in the sale of the property; overbilling; and misapplying certain legal principles in Wyoming contract law related to ambiguous language, parole evidence, and the statute of frauds.

[¶9]    After hearing argument on both motions, the district court acknowledged that Mr. Watters brought experience, finding it "nothing short of impressive," but found Mr. Watters did not speak with any Wyoming attorneys and that his research of legal standards consisted only of comparing some rules between states.  Accordingly, the court granted the motion to strike, concluding there was an insufficient showing that Mr. Watters had knowledge of "what a prudent Wyoming lawyer would have done."  Having stricken Ms. Loepp's expert, the court then granted summary judgment on all claims.  Ms. Loepp timely appealed.

## *DISCUSSION*

[¶10]  The district court's summary judgment order hinged on its concurrent, interlocutory order granting the motion to strike.  We therefore review the order to strike first. Interlocutory orders merge into final orders, and a notice of appeal that names the final judgment is sufficient to support review of earlier orders.  *In re RR*, 2021 WY 85, ¶ 66, 492 P.3d 246, 264 (Wyo. 2021) (citations omitted); *Kruckenberg v. Ding Masters, Inc.*, 2008 WY 40, ¶ 11, 180 P.3d 895, 899 (Wyo. 2008) (citations omitted).

### I.      *W.R.E. 702 Governs the Admissibility of Expert Opinion in Legal Malpractice Cases.*

[¶11]  W.R.E. 702 governs the admission of expert opinion testimony.[3]  Such testimony must meet the criteria of reliability and fitness.  *Bunting v. Jamieson*, 984 P.2d 467, 471 (Wyo. 1999) ("We now expressly adopt the analysis provided by *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)] and its progeny as guidance for the Wyoming courts' determination whether to admit or exclude expert testimony.").  The court acts as a gatekeeper for opinion testimony, and it must evaluate whether the expert's opinion is sufficiently reliable such that it could assist the trier of fact.  *Id.* (citation omitted).  There are a variety of factors for courts to consider, depending on the type of expert and the

---

[3] Wyoming Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

circumstances of the case. *Seivewright v. State*, 7 P.3d 24, 29–30 (Wyo. 2000) (citations omitted); *Bunting*, 984 P.2d at 471. In non-scientific cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 23, 114 P.3d 1268, 1280–81 (Wyo. 2005). The second criteria—fitness—is one of relevance, requiring "the trial court to determine whether the testimony 'fits' the disputed issues of fact." *Bunting*, 984 P.2d at 472 (citation omitted).

[¶12] Having an expert in a legal malpractice case is important because the plaintiff must prove: (1) the applicable standard of care; (2) the attorney's conduct departed from that standard; which (3) was the legal cause of (4) the plaintiff's injuries. *E.g.*, *Tozzi v. Moffett*, 2018 WY 133, ¶ 36, 430 P.3d 754, 764 (Wyo. 2018) (citing *Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo. 1993)). Expert testimony is generally required to establish the standard of care, a breach of that standard, and whether that breach was a proximate cause of the plaintiff's injuries. *Id.* (citations omitted). The expert is needed because "most lay people are not competent to pass judgment on legal questions." *Id.* (citations omitted); *Bevan v. Fix*, 2002 WY 43, ¶ 40, 42 P.3d 1013, 1026 (Wyo. 2002).

[¶13] This case involves the admissibility of an out-of-state expert's opinion about Wyoming legal practice. Appellees' motion to strike Mr. Watters, and the district court's order granting the motion, did not rely on W.R.E. 702's two-part reliability and fitness analysis, but instead relied on *Moore*, 855 P.2d at 1248–51. *Moore* did not address the admissibility of expert opinion, but rather defined the applicable standard of care in legal malpractice cases, stating attorneys' conduct should be based on the standard of care exercised by similar professionals in the jurisdiction. *Id.* at 1248–49 ("A lawyer is held to 'that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction.'" (citation omitted)). In *Moore*, we adopted a principle already applied in medical malpractice cases to hold that the standard of care in legal malpractice actions was not that of a local jurisdiction, meaning the community or county, but instead that of the entire State of Wyoming. *Id.* at 1249–50. We adopted a statewide standard based largely on licensing requirements. *Id.* at 1249 ("All attorneys must satisfy certain minimum requirements before being allowed to practice law in Wyoming. The level of knowledge required for admission to the bar does not vary from community to community.").

[¶14] Appellees' motion to strike relied on the following excerpt from Mr. Watters's deposition:

> Q: Thank you. Have you ever tried a case in Wyoming?
> A: No.
> Q: Have you ever litigated a case in Wyoming?
> A: No.
> Q: Where are you licensed to practice law?

4

A: Only in California.
Q: Have you ever been admitted pro hac vice in any case in Wyoming?
A: No.
. . . .
Q: And so I assume you've never had a client in Wyoming?
A: That is correct.

At the motions hearing, Appellees asserted Mr. Watters could not opine on the standard of care, and that simply repeating the standard of care from the jury instruction was inadequate to demonstrate familiarity with that standard. The district court applied the so-called "locality rule" pertaining to the standard of care defined in *Moore* to conclude that Mr. Watters must necessarily have Wyoming expertise, if not licensure and admission. *See e.g.*, *Moore*, 855 P.2d at 1249–50 ("The state is the more logical and generally accepted territorial limitation on the standard of care. . . . Accordingly, we hold that an attorney is held to that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in Wyoming."); *Tozzi*, 2018 WY 133, ¶ 36, 430 P.3d at 764; *Scranton v. Woodhouse*, 2020 WY 63, ¶ 25, 463 P.3d 785, 791 (Wyo. 2020) (citation omitted).

[¶15] We have had no occasion since *Moore* to evaluate whether or how that "locality rule" might interface with W.R.E. 702's reliability and fitness analysis for the admissibility of expert opinions. Other jurisdictions have, concluding that local standard of care considerations do not alone constitute grounds to strike an expert. Courts instead employ the reliability and fitness analysis of *Daubert* and their respective W.R.E. 702 counterparts when considering whether to admit expert legal malpractice opinions.

[¶16] The South Dakota Supreme Court, for example, considers the locality of an expert's practice as one factor in its reliability and fitness analysis, but recognizes that in some cases out-of-state attorneys can opine as to the standard of care particular to the alleged malpractice. *Hamilton v. Sommers*, 855 N.W.2d 855, 864–65 (S.D. 2014). Because a lawyer must exercise the competence and diligence normally exercised by a lawyer in "similar circumstances," the finder of fact "must consider locality, custom, and special skills" in determining whether the standard of care was breached "where local rules, practices or customs are relevant to claimed breach." *Id.* at 865 (citing 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 20:2 (2014 ed.)). However, "in many cases locality is not relevant to the application of the standard of care." *Id.* Furthermore, "in some areas of law, all the lawyers in a given state may lack the necessary skill, knowledge, and experience to handle a case properly." *Id.* (quoting Dwain E. Fagerlund, *Legal Malpractice: The Locality Rule and Other Limitations of the Standard of Care: Should Rural and Metropolitan Lawyers Be Held to the Same Standard of Care?*, 64 N.D. L. Rev. 661, 686–87 (1988)). In such cases, limiting testimony to in-state lawyers about the

standard of care "would serve to perpetuate an unacceptably low level of legal service." *Id.* (quoting Fagerlund, *supra* ¶ 17, at 686–87).

[¶17] A key tenet from the South Dakota opinion, and similar precedent around the country, is that courts should evaluate the admissibility of out-of-state malpractice experts in relation to the particular instance(s) of alleged malpractice. For example, in *Walker v. Bangs*, 601 P.2d 1279, 1282 (Wash. 1979), the alleged malpractice arose from a personal injury case that involved a maritime claim. The Washington Supreme Court determined the out-of-state lawyer proffered as an expert was qualified based on his experience as a personal injury lawyer in maritime cases in federal court. *Id.* at 1282 (citation omitted). Less-specialized cases similarly illustrate the role that particular instances of alleged malpractice play in evaluating an expert's reliability. In *Biltmore Associates, L.L.C. v. Thimmesch*, a California lawyer was retained as a legal malpractice expert in Louisiana, and he opined on 16 bases for legal malpractice. No. 2:02-cv-2405-HRH, 2007 WL 5662124, at *2 (D. Ariz. Oct. 15, 2007). The opposing party moved to strike the expert. *Id.* at *1. The court evaluated the expert's reliability for each basis of alleged malpractice before determining whether to grant the motion, leaving the possibility that the expert might be qualified to opine on some but not all of the malpractice theories. *Id.* at *2–4.

[¶18] Other courts provide less comprehensive discussions than *Biltmore Associates* but nevertheless situate their analysis to the specific instances of alleged malpractice. In *Hamilton v. Silven, Schmeits & Vaughan*, an attorney's review of the relevant rules and substantive law, and his corresponding conclusion that the applicable law was consistent between states, was sufficient to establish reliability in a malpractice action related to a personal injury action. No. 2:09-CV-1094-SI, 2013 WL 2318809, at *3 (D. Or. May 28, 2013). Similarly, two ethics attorneys in *Southern Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*, were qualified as experts to opine in a case involving international trade even though they were not in-state attorneys or international trade practitioners. No. 2:11-CV-377-38UAM, 2013 WL 5928676, at *2–3 (M.D. Fla. Nov. 1, 2013). They were qualified based on their knowledge of the rules of professional responsibility where the alleged malpractice was related to notice to a client at a particular point in the representation. *Id.*

[¶19] Where an expert is licensed or has practiced goes more to the weight than the admissibility of that expert's opinion. *S. Gardens Citrus Processing Corp.*, No. 2:11-CV-377-38UAM, 2013 WL 5928676, at *3 (concluding a challenge to an out-of-state expert's unfamiliarity with a particular subject matter "would be properly made through '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof,' but not wholesale exclusion of their testimony." (citing *Daubert*, 509 U.S. at 596)); *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 227, 237–38 (D. D.C. 2011) (recognizing knowledge and experience as expert qualifications and that the lack of in-state licensing rendered the "testimony [] less forceful and less compelling" but not, at that stage of the proceeding, "entirely unsupported or unreliable."); *Smith v. Haynsworth, Marion,*

*McKay & Geurard*, 472 S.E.2d 612, 614 (S.C. 1996) (holding "the fact that [the expert] is not licensed to practice law in this state does not disqualify him as an expert" and citing precedent that defects in qualification go to weight rather than admissibility (citations omitted)); *Walker*, 601 P.2d at 1282 ("[A] lawyer not admitted to the Washington bar is not, per se, unqualified as an expert witness in a legal malpractice action in this state. . . . [T]he fact that [the expert] is not licensed to practice in this state should go to the weight, not the admissibility of his testimony, assuming he is otherwise qualified."). Vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden(s) of proof are the traditional and appropriate means of attacking "shaky but admissible evidence." *Bunting*, 984 P.2d at 471 (quoting *Daubert*, 509 U.S. at 596); *Seivewright*, 7 P.3d at 31; *Wise v. Ludlow*, 2015 WY 43, ¶¶ 53–54, 346 P.3d 1, 15 (Wyo. 2015).

[¶20] Another common criteria for evaluating the reliability of an out-of-state legal malpractice expert is the degree to which the expert familiarized themself with pertinent state law. *Hamilton*, 2013 WL 2318809, at *3 ("Both federal and state courts allow out-of-state attorneys to testify as experts as long as they familiarize themselves with the relevant state law."). The federal district court for the District of Wyoming explained this principle in some depth:

> The Court finds that Mr. Barton and Ms. Dubofsky are well qualified and have familiarized themselves sufficiently with Wyoming law to testify regarding the legal standard of care in similar cases in Wyoming. In general, the courts have allowed experts in malpractice cases to become familiar with the applicable standard of care through research. *See, e.g.*, *Harvey v. U.S.*, 2006 WL 1980623, *4 (D. Colo. 2006) (holding that a medical expert may become familiar with the applicable standard of care through knowledge, skill, experience, training, or education); *Brett v. Berkowitz*, 706 A.2d 509, 517–18 (Del. Supr. 1998) (holding that an out-of-state expert must demonstrate that he has familiarized himself with the local standard of care); *Jeffers, Mangels & Butler v. Glickman*, 234 Cal. App. 3d 1432, 1443 (Cal. App. 2d. 1991) (holding that private study and contact with other professionals in a field may qualify an attorney as an expert). Although Plaintiff's experts' limited experience in Wyoming courts may be fertile ground for cross-examination, it is not a deficiency that prevents them from serving as expert witnesses in this case.

*Hjelle v. Ross, Ross & Santini*, Civil Action No. 2:07-cv-00006-WDM-KLM, 2007 WL 5328994, at *1 (D. Wyo. Dec. 19, 2007).

[¶21]   Building on *Moore*, the federal district court further reasoned:

> The standard of care for attorneys in Wyoming has been developed through rules and decisions rendered by the courts, not by immersion in the local legal culture. *Moore v. Lubnau,* 855 P.2d 1245, 1248–49 (Wyo. 1993) (holding that the standard of care in Wyoming is "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction"). Indeed, the practice of law in general is based on study and comparison of statutes and caselaw, and lawyers are trained to—and frequently must—learn the law of jurisdictions in which they are not licensed. In a case like this, in addition to the fairly ordinary task of studying Wyoming law on the standard of care, out-of-state attorneys like Mr. Barton and Ms. Dubofsky have an additional task, which is to study and understand local practice standards. The Court is satisfied that both Mr. Barton and Ms. Dubofsky have the skills and experience to undertake the necessary study so as to render expert opinions here.

*Id.*; *see also San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1192–93 (N.D. Ala. 2012) (finding that where an out-of-state expert has done little apply or learn the standards for practice in a jurisdiction, they may not be qualified to opine); *Glaser v. Pullman & Comley, LLC*, 871 A.2d 392, 401 (Conn. App. Ct. 2005) (finding an attorney could offer opinion testimony despite being licensed outside the state but excluding him because of an inadequate showing he had more than a casual understanding of the standard of care); Mallen & Smith, *Legal Malpractice* § 37:141 (2022 ed.) (evaluating cases qualifying out-of-state attorneys as experts based on study and research).

[¶22]   W.R.E. 702 governs the admissibility of expert opinion in legal malpractice cases. Where a lawyer is licensed or practices is a factor to consider in that analysis. There may be instances where an out-of-state lawyer has reliable expertise on matters not unique to Wyoming, such as uniform laws, federal matters, and rules that are consistent across jurisdictions.[4]  *Hamilton*, 2013 WL 2318809, at *3–4; *Walker*, 601 P.2d at 1282; *Russo v. Griffin*, 510 A.2d 436, 439 (Vt. 1986).  There also may be instances where the standard of

---

[4] Secondary authority also recognizes the standard of care is not necessarily limited by state jurisdiction, depending on the area of law at issue. *Dobbs Law of Torts* § 720 (April 2024 update) ("The usual geographic scope of a lawyer's standard of care is the state in which the lawyer practices" but "[i]n many areas of practice, a national standard seems entirely appropriate."); Restatement (Third) of the Law Governing Lawyers § 52 cmt. b (March 2024 update) (commenting that the standard of care is that of lawyers "undertaking similar matters in the relevant jurisdiction (typically, a state)" but that in some cases there is a national standard of care, not limited by state jurisdictions).

care is unique to Wyoming but an out-of-state attorney might nevertheless qualify as an expert based on their research into the local standards. *Hjelle*, 2007 WL 5328994, at *1. In all cases, a court should tailor its reliability analysis to the circumstances of the case, looking closely at the nature of the alleged malpractice. Generalized or provincial conclusions must be avoided. *See Biltmore Assocs.*, 2007 WL 5662124, at * 2.

[¶23] We therefore instruct the court on remand to analyze the reliability of Mr. Watters's opinion under W.R.E. 702, considering the nature of each of Ms. Loepp's malpractice claims and whether those claims are so state-specific that Mr. Watters could not assist the trier of fact.

## II. *Summary Judgment Was Dependent on the Order Striking the Expert and No Other Basis Appears in the Record to Affirm.*

[¶24] We review a summary judgment de novo, in the same light as the district court, using the same materials and following the same standards. *W. Am. Ins. Co. v. Black Dog Consulting Inc.*, 2023 WY 109, ¶ 7, 538 P.3d 973, 975–76 (Wyo. 2023) (citations omitted). We examine the record from the vantage point most favorable to the non-moving party, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* We may affirm a summary judgment order on any basis in the record. *Id.*

[¶25] The district court granted summary judgment on all claims through a short order stating:

> 1. Defendants' Motion for Summary Judgement on Count 1 legal malpractice was dependent on this Court also granting Defendants' Motion to Strike Plaintiff's Legal Malpractice Expert excluding Michael Watters opinion testimony regarding the malpractice claim asserted by Plaintiff. Defendants argued that without Michael Watters's expert testimony, Plaintiff could not prove the elements of legal malpractice.
>
> 2. By separate order, this Court granted Defendants' motion. Therefore, because Michael Watters' testimony will be excluded, the Plaintiff cannot prove the elements of legal malpractice and no disputed issues of material fact concerning legal malpractice remain. As such, this motion must be granted.

9

Because the court's summary judgment decision was dependent on its order striking Mr. Watters, and because we reversed the court's order to strike, we cannot affirm the summary judgment order as presented.

[¶26] However, the district court dismissed all claims, not just the legal malpractice claims, for lack of a malpractice expert. Ms. Loepp also alleged breach of contract, breach of fiduciary duty, and gross negligence. Because we may affirm a summary judgment order on any basis in the record, *W. Am. Ins. Co.*, 2023 WY 109, ¶ 7, 538 P.3d at 975–76, we briefly consider whether summary judgment might be warranted on any other grounds Appellees presented to the court. Specifically, Appellees asserted all claims in the matter should be dismissed because (1) the statute of limitations barred all claims; (2) the summary judgment order in the Loepp–Scott litigation (that preceded settlement of that litigation) was not a final appealable order giving rise to damages; and, (3) one component of damages, for emotional distress, was not recoverable.[5]

[¶27] We first consider Appellees' argument that the two-year statute of limitations for the legal malpractice claim, Wyo. Stat. Ann. § 1-3-107(a)(i)(A)–(B), controlled all claims in this case pursuant to *Prokop v. Hockhalter*, 2006 WY 75, ¶¶ 14–15, 137 P.3d 131, 135–36 (Wyo. 2006), and that for summary judgment purposes, the limitations period began April 30, 2020, the date of the summary judgment hearing in the Loepp–Scott litigation. Ms. Loepp responded that the district court did not issue a ruling after that April 30 hearing until June 22, 2020, and that she filed her complaint in this action within two years of that date. Moreover, her various alleged instances of malpractice, including billing and post-summary judgment matters, continued until September 22, 2020. Most importantly, Ms. Loepp demonstrated that Appellees appeared to expressly withdraw their statute of limitations defense during discovery:

> Interrogatory Response No. 1. Please state with specificity any evidence you have to support any of the defenses raised in your Answer to the Complaint.
>
> . . . .
>
> 6. ["]Defendants assert that the case is barred by the two-year statute of limitations set forth in W.S. §1-3-107.["]
>
> Defendants will withdraw this defense. It appears that the case has been timely filed.

---

[5] Appellees also asserted judgment should be granted because Mr. Watters could not opine on causation for <u>one</u> of the several alleged bases for legal malpractice—not filing the breach of contract action first. Having reversed the district court's order striking Mr. Watters, we decline to evaluate this portion of the summary judgment proceedings further.

At minimum, Appellees agreed at the summary judgment hearing there were disputed issues of material fact regarding the statute of limitations. Construing the facts in favor of Ms. Loepp, the statute of limitations provides no basis on which we can affirm summary judgment for Appellees.

[¶28] Next, we consider Appellees' assertion that Ms. Loepp could not have been damaged through summary judgment in the Loepp–Scott litigation because that summary judgment order was not a final appealable order. Because this narrow argument does not apply to the full breadth of Ms. Loepp's malpractice claims, including overbilling, it also does not afford a basis by which we can affirm the summary judgment ruling in Appellees' favor.

[¶29] Appellees also asserted that emotional distress damages are not available in legal malpractice cases, pointing to *Long-Russell v. Hampe*, 2002 WY 16, ¶ 11, 39 P.3d 1015, 1021 (Wyo. 2002). At the summary judgment hearing, however, Appellees conceded that emotional distress damages are recoverable through legal malpractice in certain circumstances, such as if the conduct was willful and wanton. Counsel and the court then discussed whether Ms. Loepp needed to present evidence of willful and wanton conduct before deciding the issue and whether emotional distress damages were also recoverable through Ms. Loepp's claim for gross negligence. Counsel concurred Ms. Loepp could present such evidence before deciding the issue, although counsel believed the evidence would not show such misconduct. After reviewing the record and construing the facts in favor of Ms. Loepp, we cannot affirm summary judgment on this basis either.

## *CONCLUSION*

[¶30] Having determined that W.R.E. 702 governs the admissibility of expert opinion in legal malpractice cases and that where a proffered malpractice expert is licensed or practices is just one factor to consider in the W.R.E. 702 analysis, we reverse and remand for further proceedings on the motion to strike. Because we find no other basis on which to affirm the related summary judgment decision, we also reverse and remand the court's summary judgment order for further proceedings consistent with this opinion.