# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 98

**APRIL TERM, A.D. 2025**

**September 4, 2025**

RANDALL BRUCE MORRIS,

Appellant
(Defendant),

v.                                                    S-24-0114, S-24-0325

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Public Defender. Argument by Mr. Bennett.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before BOOMGAARDEN, C.J., and FOX,\* GRAY, FENN, and JAROSH, JJ.*

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2025), she was reassigned to act on this matter on May 28, 2025.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Randall Bruce Morris was convicted by a jury of sexually abusing his minor step-granddaughter.  He filed a motion for a new trial claiming ineffective assistance of counsel.  The district court denied the motion, and Mr. Morris appealed.  We affirm.

## ISSUE

[¶2]    Mr. Morris raises one issue, which we restate as:

> Did the district court err by denying Mr. Morris' motion for a
> new trial based on ineffective assistance of counsel?

## FACTS

[¶3]    In May 2022, Mr. Morris was babysitting BA, his ten-year-old paternal step-granddaughter, at her home (family home) in Gillette, Wyoming, while her parents worked.  Mr. Morris called BA to the living room, where he was sitting on the couch.  She sat on his lap, and he showed her videos of individuals having sex.  Mr. Morris raised BA's shirt, took off her bra, and started touching and kissing her breasts.  After he told her not to tell anyone, BA left to use the bathroom.  Mr. Morris followed her.  While she was sitting on the toilet with her pants and underwear pulled down, Mr. Morris opened the bathroom door, pulled her off the toilet, and penetrated her anus with his finger.

[¶4]    Several months later, on Friday, August 26, 2022, BA's parents traveled to Denver, Colorado, for a preseason football game between the Denver Broncos and the Minnesota Vikings, which was scheduled for the next day, Saturday, August 27.  Mr. Morris' wife stayed at the family home to watch BA and her siblings.  On Saturday evening, Mr. Morris came to the family home.  He read a book to BA and her brother in her brother's basement bedroom.  After listening for a while, BA went to her own bedroom, which was also in the basement, to sleep.  She was lying in her bed when Mr. Morris came into her room.  He removed her pants and underwear, picked up her legs, placed them on his shoulders, and penetrated her vagina with his finger.

[¶5]    On October 3, 2022, BA asked her mother who would be babysitting on her parents' next out-of-town trip.  When her mother said Mr. Morris, BA stated she did not want him to babysit because he had touched her "inappropriately."  Her mother asked her where Mr. Morris had touched her, and BA responded that he had touched her breasts, her bottom, and her vagina, and the touching occurred under her clothing.  BA's mother took BA to the local emergency room, and hospital staff reported the abuse to the police.

[¶6]    Detective Julianne Witham with the Gillette Police Department scheduled BA for a forensic interview.  During the interview, BA described the events outlined above.

1

Detective Witham also interviewed Mr. Morris. He admitted that from May to July 2022, he and/or his wife often babysat BA and her siblings at the family home while her parents worked. He also acknowledged that his wife babysat BA and her siblings at the family home from August 26 to August 28 while BA's parents attended a preseason Denver Broncos game. Mr. Morris confirmed he visited the home for 30 to 45 minutes on the evening of Saturday, August 27. He denied ever touching BA inappropriately.

[¶7]    Detective Witham asked Mr. Morris if he would be willing to take a polygraph examination. Mr. Morris agreed. Officer Steven Wageman with the Gillette Police Department administered the exam. Prior to the examination, which was recorded, Officer Wageman and Mr. Morris determined the relevant issue was whether Mr. Morris "touched [BA]'s vagina and buttocks skin to skin on a Sunday in August 2022 at [BA]'s house." Mr. Morris "described that particular Sunday as the one [when] the Minnesota Vikings played the Denver Broncos in Denver." Based on this discussion, Officer Wageman asked Mr. Morris if he touched BA's vagina or buttocks skin to skin "on that Sunday in August." Mr. Morris answered "[n]o." Officer Wageman "read the charts" and "scored them" as "no deception indicated."

[¶8]    The State charged Mr. Morris with two counts of first-degree sexual abuse of a minor for digitally penetrating BA's anus and vagina (Count 1 and Count 2, respectively) and one count of second-degree sexual abuse of a minor for touching and/or kissing BA's breasts (Count 3). *See* Wyo. Stat. Ann. §§ 6-2-314(a)(i) (first-degree sexual abuse of a minor), 6-2-315(a)(ii) (second-degree sexual abuse of a minor). On the first day of trial, the State called Detective Witham as a witness. During cross-examination of Detective Witham, the prosecutor moved, outside the presence of the jury, to exclude any testimony concerning Mr. Morris' polygraph examination, claiming such evidence was inadmissible under W.R.E. 702 and W.R.E. 403. Defense counsel opposed the motion, stating he intended to introduce the video recording of the polygraph examination through Detective Witham. He argued the results of the examination were exculpatory and relevant as they revealed no deception. The district court granted the State's motion, concluding there was "ample law that polygraph tests are inadmissible under [Rules] 702 and 403[.]"

[¶9]    The jury found Mr. Morris guilty of all three counts. The district court sentenced him to 35–50 years in prison on Counts 1 and 2 and to 18–20 years in prison on Count 3. It ordered the sentences to run consecutive to each other. Mr. Morris directly appealed his convictions and sentences (Appeal No. S-24-0114).

[¶10]  While his direct appeal was pending, but prior to briefing, Mr. Morris filed a motion for a new trial under W.R.A.P. 21, claiming defense counsel was constitutionally ineffective for failing to request a hearing under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to provide the district court with the appropriate opportunity to consider the admissibility of the results of his polygraph

2

examination. We stayed the direct appeal pending the district court's resolution of the Rule 21 motion.

[¶11] After holding an evidentiary hearing, the district court denied Mr. Morris' Rule 21 motion because he failed to satisfy the prejudice prong of his ineffective assistance of counsel claim. Relevant here, it determined that even had counsel requested and the court held a *Daubert* hearing, the results of the polygraph examination would not have been admissible at trial under Rule 702. The court found one of the requirements for admissibility of evidence under Rule 702 is that the evidence must assist the trier of fact in understanding the evidence or determining the fact at issue. It concluded this requirement was not met because defense counsel admitted at the evidentiary hearing that his purpose for admitting the polygraph examination results was to bolster Mr. Morris' credibility. The court found admission of the evidence for this purpose would not assist the jury but would invade the jury's role as the sole judge of witness credibility. Mr. Morris timely appealed the denial of his Rule 21 motion (Appeal No. S-24-0325).

[¶12] We consolidated Mr. Morris' appeals. Mr. Morris challenges only the district court's denial of his Rule 21 motion.

## STANDARD OF REVIEW

[¶13] A district court's denial of a Rule 21 motion based on ineffective assistance of counsel "involves mixed questions of law and fact." *Mellott v. State*, 2019 WY 23, ¶ 11, 435 P.3d 376, 381 (Wyo. 2019) (citing *Griggs v. State*, 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016)); *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)). "[W]e review de novo the court's legal conclusions, including whether counsel's conduct was deficient and whether defendant was prejudiced as a result." *Winters v. State*, 2019 WY 76, ¶ 12, 446 P.3d 191, 198–99 (Wyo. 2019) (citing *Griggs*, ¶ 37, 367 P.3d at 1124). "[W]e defer to the district court's findings of fact unless they are clearly erroneous." *Mellott*, ¶ 11, 435 P.3d at 382 (quoting *Griggs*, ¶ 37, 367 P.3d at 1124 (quoting *Cooper v. State*, 2014 WY 36, ¶ 20, 319 P.3d 914, 920 (Wyo. 2014))).

## DISCUSSION

[¶14] Mr. Morris argues the district court erred by denying his Rule 21 motion because defense counsel performed deficiently by failing to request a *Daubert* hearing on the admissibility of his polygraph examination results. He claims counsel's deficient performance prejudiced him because his "passing" polygraph examination results would have impeached Detective Witham's continued investigation of BA's allegations.

[¶15] "A criminal defendant has the right to the effective assistance of counsel." *Winters*, ¶ 11, 446 P.3d at 198 (citing U.S. Const. amend. VI; Wyo. Const. art. 1, § 10; *Strickland*

3

*v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984)). To succeed on a claim of ineffective assistance of counsel, a defendant "must show both that counsel's performance was deficient, and he was prejudiced as a result." *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022) (quoting *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936 (Wyo. 2022) (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351 (Wyo. 2021))). Counsel "acts deficiently when he or she 'fail[s] to render such assistance as would have been offered by a reasonably competent attorney.'" *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015) (quoting *Bloomer v. State*, 2010 WY 88, ¶ 18, 233 P.3d 971, 976 (Wyo. 2010)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of [appellant's] trial would have been different.'" *Id.* (quoting *Bloomer*, ¶ 18, 233 P.3d at 976). "The failure to make the required showing of either deficient performance or prejudice will result in a finding that counsel was not ineffective." *Leners v. State*, 2021 WY 67, ¶ 21, 486 P.3d 1013, 1018 (Wyo. 2021) (quoting *Weston v. State*, 2019 WY 113, ¶¶ 34–35, 451 P.3d 758, 768 (Wyo. 2019) (quoting *Osborne v. State*, 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012))).

[¶16] Because an appellant must establish both deficient performance and prejudice, "a court can decide an ineffective assistance claim on the prejudice prong without considering the deficient performance prong." *Yazzie v. State*, 2021 WY 72, ¶ 21, 487 P.3d 555, 563 (Wyo. 2021) (citing *Wall v. State*, 2019 WY 2, ¶ 39, 432 P.3d 516, 527 (Wyo. 2019) (quoting *Larkins v. State*, 2018 WY 122, ¶ 62, 429 P.3d 28, 43–44 (Wyo. 2018))). *See also Jendresen*, ¶ 37, 491 P.3d at 285 ("We may dispose of an ineffective assistance claim solely on the prejudice prong."). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Leners*, ¶ 21, 486 P.3d at 1018 (quoting *Fairbourn v. State*, 2020 WY 73, ¶ 62, 465 P.3d 413, 428 (Wyo. 2020) (quoting *McNaughton v. State*, 2016 WY 112, ¶ 12, 384 P.3d 276, 278 (Wyo. 2016) (quoting *Sen v. State*, 2013 WY 47, ¶ 39, 301 P.3d 106, 121 (Wyo. 2013)))). We follow that course here.

[¶17] To establish prejudice, Mr. Morris had to show that if a *Daubert* hearing had been requested, the polygraph examination results would have been admissible at trial, and there is a reasonable probability that their admission would have made a difference in the outcome of his trial. He failed to make this showing because the polygraph examination results would not have satisfied the *Daubert* standard and therefore would not have been admissible at trial under Rule 702.

[¶18] "W.R.E. 702 governs the admission of expert opinion testimony." *Loepp v. Ford*, 2024 WY 63, ¶ 11, 550 P.3d 96, 100 (Wyo. 2024). It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert has reliably applied the principles and methods to the facts of the case.

W.R.E. 702. A district court's decision to admit or exclude expert opinion testimony under Rule 702 is guided by *Daubert* and its progeny. *Bunting v. Jamieson*, 984 P.2d 467, 471 (Wyo. 1999) ("We now expressly adopt the analysis provided by *Daubert* and its progeny as guidance for the Wyoming courts' determination whether to admit or exclude expert testimony."). *See also Loepp*, ¶ 11, 550 P.3d at 100–01 (expert opinion testimony must meet the *Daubert* criteria). Under *Daubert*, to be admissible, the evidence must be both reliable and "fit" the facts of the particular case. *Bunting*, 984 P.2d at 471 (citing *Daubert*, 509 U.S. at 592–93, 113 S.Ct. at 2796); *Hardman v. State*, 2020 WY 11, ¶ 21, 456 P.3d 1223, 1229 (Wyo. 2020).

[¶19]  When determining whether evidence is reliable under *Daubert*, the district court must first decide whether the evidence "will assist the trier of fact to understand or determine a fact in issue." *Cramer v. Powder River Coal, LLC*, 2009 WY 45, ¶ 41, 204 P.3d 974, 984–85 (Wyo. 2009) (quoting *Daubert*, 509 U.S. at 592, 113 S.Ct. at 2796). If so, the district court then considers several nonexclusive criteria to determine reliability:

> 1) whether the theory or technique in question can be and has been tested; 2) whether it has been subjected to peer review and publication; 3) its known or potential rate of error along with the existence and maintenance of standards controlling the technique's operation; . . . 4) the degree of acceptance within the relevant scientific community[;] . . . [5)] the extensive experience and specialized expertise of the expert[;] . . . [6)] whether the expert is proposing to testify about matters growing naturally and directly out of research [he has] conducted independent of the litigation; and [7)] the non-judicial uses to which the method has been put[.]

*Hardman*, ¶ 21, 456 P.3d at 1229 (quoting *Reichert v. Phipps*, 2004 WY 7, ¶ 8, 84 P.3d 353, 356 (Wyo. 2004)). The second part of *Daubert*'s two-part test, whether the expert

testimony "fits" the particular facts of the case, "is a question of relevance that incorporates the concept of helpfulness found in W.R.E. 702. In other words, the expert's opinion must relate to an issue that is actually in dispute and must provide a valid scientific connection to the pertinent inquiry." *Reichert*, ¶ 8, 84 P.3d at 356 (citations and quotation marks omitted). Mr. Morris failed to show the polygraph examination results would have satisfied any of the above criteria for admissibility.

[¶20] Mr. Morris' polygraph examination results would not have assisted the trier of fact to understand or determine a fact in issue. At the Rule 21 hearing, defense counsel disclosed that he intended to use the results of the polygraph examination, if admitted, to bolster Mr. Morris' credibility. As the district court aptly concluded, such use of the polygraph evidence would not assist the jury but would instead invade the jury's role as the exclusive judge of credibility. *See Nania v. State*, 2025 WY 16, ¶ 22, 562 P.3d 1306, 1312 (Wyo. 2025) (acknowledging that "the jury is the lie detector" and "our long-standing rule [that] an expert may not vouch for the truthfulness or credibility of an alleged victim or of any other witness" (citations and quotation marks omitted)); *Craft v. State*, 2013 WY 41, ¶ 31, 298 P.3d 825, 834 (Wyo. 2013) ("W.R.E. 704 states: 'Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.' However, we have repeatedly stated that these evidentiary rules do not allow any witness, whether lay or expert, to express an opinion as to the accused's guilt or the credibility of another witness.").

[¶21] On appeal, Mr. Morris argues the results of his polygraph examination would have impeached Detective Witham's decision to continue to investigate BA's allegations after he "passed" the polygraph examination. The problem for Mr. Morris is that he did not provide any evidence at the Rule 21 hearing establishing that the results of the polygraph examination were reliable under the seven factors outlined above. *See Jackson v. State*, 2019 WY 81, ¶ 28, 445 P.3d 983, 991 (Wyo. 2019) ("[A] claim of prejudice must be supported by more than bald assertions or speculation." (quoting *Castellanos v. State*, 2016 WY 11, ¶ 99, 366 P.3d 1279, 1305 (Wyo. 2016))).

[¶22] Officer Wageman testified at the Rule 21 hearing.[1] He became a polygraph examiner in 2002 after taking an eight-week course. Since that time, he has engaged in regular training on polygraph examinations. He has not, however, written on the subject, nor has he ever been certified as an expert to testify in a criminal trial regarding polygraph examinations. While he conducts polygraph examinations in criminal cases, Officer Wageman primarily administers them to applicants applying to work for the Gillette Police Department and other local law enforcement agencies. He testified scientific testing has been conducted on polygraph examinations and that testing has been peer reviewed, but he did not know what the peer review process entailed or who performed the peer review. He

---

[1] Although Mr. Morris did not call Officer Wageman or another polygraph expert as a witness at the Rule 21 hearing, the State did call Officer Wageman.

did not know whether there had been any changes in the scientific evidence or research regarding polygraph examinations since 2002, nor could he speak to the known or potential error rate of the current polygraph examination technology. Officer Wageman's testimony did not establish the reliability of the polygraph examination results, and he was the only witness to testify on reliability.

[¶23] Mr. Morris also failed to satisfy the "fitness prong" of the *Daubert* test for admissibility. The evidence showed Mr. Morris sexually abused BA in May 2022 and on Saturday, August 27, 2022. Officer Wageman, however, did not ask Mr. Morris during the polygraph examination whether he touched BA's breasts, anus, or vagina on those dates. Rather, he asked Mr. Morris whether he touched BA's vagina and buttocks on "that Sunday" in August because he and Mr. Morris had agreed "that the time frame of [the abuse] was a Sunday when the Vikings were playing the Broncos." Officer Wageman testified he wanted the question to be "very specific so that . . . there's not a fear of anything being bled over from another time." He stated the results of a polygraph examination are "dependent on the specific question that is presented[.]" The polygraph examination results did not satisfy the second part of *Daubert*'s two-part test because they did not "fit" the particular facts of this case.

[¶24] Having failed to show actual prejudice—that had a *Daubert* hearing been requested, the polygraph examination results would have been admissible at trial, and they would have made a difference in the outcome of his trial—Mr. Morris argues we should presume prejudice in this case. Prejudice may be presumed when the "deficiencies in trial counsel's performance ' . . . so prejudice the right of a defendant to a fair trial that [they] will serve to support a conclusion that reasonably effective assistance was not afforded.'" *Mellott*, ¶ 31, 435 P.3d at 387 (quoting *King v. State*, 810 P.2d 119, 122 (Wyo. 1991)). Cases where we have presumed prejudice are rare. *JP v. State*, 2022 WY 94, ¶ 25, 514 P.3d 785, 792 (Wyo. 2022). One of those rare cases, and the case relied on by Mr. Morris, is *King*, 810 P.2d at 122.

[¶25] In *King*, defense counsel failed to interview and secure the testimony of two alleged eyewitnesses who would have likely supported Mr. King's claim that the crime never occurred. *Id.* at 120–22. We concluded:

> "The failure to pursue an interview [with an alleged eye witness] constitute[s] an abrogation of counsel's duty to * * * conduct a reasonable investigation and to utilize any information obtained in providing a reasonable defense." *Gist* [*v. State*], 737 P.2d [336,] 343 [(Wyo. 1987)]. When this deficiency is demonstrated, the appellant need not demonstrate the resulting prejudice, it is presumed. "Prejudice in [this circumstance] is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 693,

104 S.Ct. at 2067. *See also Sanders v. Sullivan*, 701 F. Supp. 996 (S.D.N.Y. 1987), also involving a failure to secure attendance at trial; and *Richardson v. State*, 189 Ga. App. 113, 375 S.E.2d 59 (1988), where proposed alibi witnesses were neither interviewed nor subpoenaed.

*King*, 810 P.2d at 123.

[¶26] Mr. Morris argues defense counsel's failure to explore the admissibility of the polygraph examination results through a *Daubert* hearing is akin to a failure to conduct a competent and independent investigation under *King*, and prejudice should be presumed. We have criticized *King*'s conclusion that prejudice is presumed when counsel fails to conduct a reasonable investigation. *See Pickering v. State*, 2020 WY 66, ¶ 70, 464 P.3d 236, 258 (Wyo. 2020) ("The *Strickland* language cited in *King* referred to ineffective assistance of counsel in general, not the failure to interview a witness."); *Winters*, ¶ 51, 446 P.3d at 209 ("*King*'s reliance on *Strickland* is misplaced, as *Strickland* was speaking to the '[a]ctual or constructive denial of the assistance of counsel altogether' and 'state interference with counsel's assistance.'" (quoting *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067)). In any event, this case is distinguishable from *King*. Mr. Morris failed to establish that the polygraph examination results would have been admissible at trial and they were not exculpatory—the results indicated Mr. Morris was not being deceptive in denying events <u>on a Sunday</u> in August, but the sexual abuse occurred in May 2022 and <u>on a Saturday</u> in August. Under the circumstances of this case, there is no presumption of prejudice.

## *CONCLUSION*

[¶27] Mr. Morris failed to show he was prejudiced by defense counsel's alleged deficient performance in failing to request a *Daubert* hearing to determine the admissibility of Mr. Morris' polygraph examination results. We affirm the district court's denial of Mr. Morris' Rule 21 motion.